## McMannis *vs.* Butler.

In an action for trespass on real estate, the plaintiff claimed to have acquired the title in fee to the premises by a purchase at a foreclosure sale. The defense was that the plaintiff's title was subject to a public easement or right of way; that the *locus in quo* was a public street; and that the acts complained of were done by the defendant in the rightful exercise of his authority as street superintendent, and by the direction of the common council of the city of Rochester, who had control of the streets of the city. The only evidence to prove the existence of the alleged street consisted of testimony tending to show a dedication and user; but there was no proof of an effective dedication prior to the execution of the mortgage in 1857, at a sale under which the plaintiff became the purchaser; the only evidence looking that way being a map, made and filed in 1826, on which the premises were marked as a part of a street. But there was no proof of an acceptance by the city, nor that the parties who made and filed the map ever owned the premises, or had any right or authority to dedicate them. *Held* that the evidence was insufficient to show a dedication of the premises to the public.

It was also proved that in 1858, the city authorities caused a street, including the premises in question to be improved and worked; that in so doing, the defendant, as street superintendent, tore down a house upon the premises, with the consent of the owner, and the city paid him the value of it; and that ever since, the street, including the premises in question, had remained open, and had been used as a public highway, under the control of the city authorities, with the exception of certain acts of occupation by the plaintiff. The defendant claimed that the city had an interest in the premises, by virtue of the purchase from the former owner (the mortgagor) and was not served with notice of the foreclosure proceedings; that the plaintiff therefore was not entitled to assert possession of the premises, to the exclu-

sion of the city, at the time of the alleged trespass. *Held* that if the city was not served with notice, the only consequence was that, as to it, the mortgage was unforeclosed, and the plaintiff was to be regarded as a mortgagee in possession. That his mortgage being past due, and paramount to the rights of the city, was sufficient to maintain his possession, as against the defendant.

It is a general rule that a statute affecting rights and liabilities should not be so construed as to act upon those already existing.

Section 156 of chapter 143 of the laws of 1861, (being an act in relation to the city of Rochester) which directs that "Whenever any street, alley or lane shall have been open to and used as such by the public, for the period of five years, the same shall thereby become a street, alley or lane for all purposes, and the said common council shall have the same authority and jurisdiction over, and right and interest in, the same, as they have by law over the streets, alleys and lanes laid out by it," was not intended to have a retro-active effect, so as to divest parties of existing rights, or to justify trespasses committed before it was passed.

THIS was an action for trespass on real estate described as a lot in the city of Rochester, on the south side of Champion street, thirty feet front and eight rods deep. The cause was tried at the Monroe circuit, in January, 1867, and a verdict was rendered in favor of the defendant, under the direction of the court. The plaintiff proved a deed of a tract of land including the premises in question, from William J. McCracken to Milton Ingersoll, dated and recorded in 1850; a mortgage of the lot in question, for $936.40, from Ingersoll to The Eagle Bank of Rochester, dated and recorded in August, 1857; and an assignment of said mortgage from The Traders' Bank of Rochester, the legal successor of The Eagle Bank, to the plaintiff, dated February 21, 1865; and proceedings to foreclose said mortgage by advertisement, recorded May 24, 1865, from which it appeared that said premises were bid in on the foreclosure sale, by the plaintiff, on the 20th of May, 1865. The plaintiff also proved that Ingersoll moved a house on to the mortgaged premises, and inclosed a part of the same, and continued in possession, until 1858, when the house was torn down; and that the plaintiff went into possession of the premises in June, 1865,

and built fences on the lines thereof; and that afterwards, in the same month, the defendant went upon the premises, tore down the fences on the north and south lines, and filled up the post holes. The plaintiff then rested.

The defendant then put in evidence a map of the Mc-Cracken tract, made and filed in Monroe county clerk's office, in 1826, by Daniel Perkins, on which map the premises in question were marked as a part of a street called Burnes street. The defendant also proved that said premises, before Ingersoll purchased them, were not enclosed, and were used by teams passing to and from Champion street; that soon after Ingersoll received his deed, in 1853, he removed the house above mentioned on to the premises; that it was a small house, twelve by sixteen feet; no cellar was dug under it, but it was placed on blocks, and so remained, until June, 1858, when it was taken down; and that Ingersoll said that he put the house on blocks so that it could be moved away easier, if necessary, and that he supposed the lot was a street, for it was laid out as such; that Ingersoll enclosed and cultivated a part of the lot; that in June, 1858, the proper authorities of the city caused Burnes street, including the premises in question, to be improved and worked; that in so doing, the defendant, who was street superintendent, tore down said house, with Ingersoll's consent, and paid him the value of it and of the vegetables growing on the lot, which he accepted; and that ever since, Burnes street, including the premises in question, has remained open, and has been used as a public highway, under the control of the proper city authorities, until the acts of occupation of the plaintiff above stated. The defendant also put in evidence section 156 of chapter 143 of the laws of 1861, being an act in relation to the city of Rochester, which is as follows:

"Whenever any street, alley or lane shall have been open to and used as such by the public for the period of five years, the same shall thereby become a street, alley or lane for all purposes, and the said common council shall have the same

authority and jurisdiction over, and right and interest in, the same, as they have by law over the streets, alleys and lanes laid out by it."

The testimony being closed, the court directed the jury to find a verdict for the defendant, under the following decisions and instructions :

1. That there had been no effective dedication of the premises in question, or any part thereof, as a street, prior to 1858 ; but that the acts of Milton Ingersoll in accepting payment from the common council of the city, for the said dwelling house, amounted to a new dedication of the land, for a street, which was binding upon his prior mortgagees, and upon the plaintiff.

2. That the acts of the city authorities, at that time and since, in reference to said street, were an acceptance of said dedication, and that such dedication had also been accepted by the public, by the user ever since.

3. That said section 156, above transcribed, was applicable to the facts of this case, and was in the nature of a statute of limitations. And as said street had been open to, and used by, the public as a street for five years since June, 1858, though less than five years since, 1861, at the time of the alleged trespasses, it thereby became a public street of said city.

The plaintiff's counsel excepted to the first and third of the instructions above stated, separately, and the court ordered a stay of judgment, and that the exceptions be heard at the general term, in the first instance.

*J. C. Cochrane*, for the plaintiff.

*E. A. Raymond*, for the defendant.

*By the Court*, JAMES C. SMITH, J. It appears to have been taken for granted, on the trial, that the plaintiff acquired the title in fee, to the premises in question, by his purchase at the foreclosure sale. The defense sought to be established was, that the plaintiff's title was subject to a public ease-

ment or right of way ; that the *locus in quo* was a public street; and that the acts complained of were done by the defendant in the rightful exercise of his authority as street superintendent, and by the direction of the common council, who had control of the streets of the city.

The only evidence introduced to prove the existence of the alleged street consisted of testimony tending to show a dedication and user ; but as the judge expressly ruled, there was no proof of an effective dedication prior to the execution of the mortgage to the bank, in 1857. The only item of evidence looking that way was the map made and filed by Daniel McCracken and Charles Perkins, in 1826, on which the premises were marked as a part of a street, called Burnes street. But so far as the case shows, there was no proof of an acceptance by the city, nor indeed that the parties who made and filed the map ever owned the premises, or had any right or authority to dedicate them. At any rate, if there was any evidence tending to show either an acceptance by the city, or even by the public, there was no request to submit it to the jury, and it seems the court passed upon it without objection by either party.

But the judge also ruled that the acts of Ingersoll, in accepting payment for his building and growing crops, from the common council, in 1858, amounted to a dedication, and that such dedication was binding upon his prior mortgagee, the Eagle Bank, and also upon the plaintiff, who acquired title through the bank mortgage. I do not understand the counsel for the defendant to claim that the latter proposition can be maintained, in the precise form in which it is stated in the case, but he argues that the evidence shows that there was a dedication of the premises, in 1826, which did not become effective, merely because it was not accepted by the public or the common council ; that notwithstanding the want of such acceptance the public acquired certain rights in the premises, which were simply in abeyance ; that the possession of Ingersoll was in subordination to those rights, and

in recognition of them ; that the bank took the mortgage with notice of the character of his possession and of the rights of the public ; and that Ingersoll, by accepting payment and surrendering possession, revived the former dedication, so that it bound his prior mortgagee. But his reasoning rests upon the assumption that there was a dedication of the premises in 1826, which, as we have seen, is entirely unsupported by the evidence.

It is claimed by the counsel for the defendant that the city had an interest in the premises, by virtue of the purchase from Ingersoll, and was not served with notice of the foreclosure proceedings ; that the plaintiff therefore was not entitled to assert possession of said premises, to the exclusion of the city, at the time of the alleged trespass. If the city was not served with notice, the only consequence is that as to it the mortgage is unforeclosed, and the plaintiff is to be regarded as a mortgagee in possession. His mortgage being past due, and paramount to the rights of the city, is sufficient to maintain his possession, as against the defendant.

The only remaining question is whether the statute relied upon by the defendant as a statute of limitations, was intended to have a retro-active effect. I think it was not. Its language evidently contemplates future acts only. There is nothing in its terms warranting the idea that it was intended to divest parties of existing rights, or to justify trespasses committed before it was passed ; yet each of those mischiefs might result from it, if it were retrospective. Full effect is given to its words by holding that it is prospective only ; and it is a general rule that a statute affecting rights and liabilities should not be so constructed as to act upon those already existing. (7 *John.* 477. 18 *id.* 138. 2 *Hill,* 238. 3 *Barb.* 306.)

A new trial should be ordered, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, June 3, 1867. *J. C. Smith, E. D. Smith* and *Johnson,* Justices.]