## McMannis *vs.* Butler.

Section 27 of the act of 1813, " to regulate highways," (2 *R. L. p.* 277, *ch.* 33,) adopted in the revision of 1830, (1 *R. S.* 520, § 99,) which provides that a street must be opened and worked within six years from the time of its being laid out, to make it a highway, has no relation to highways dedicated by the owners themselves to the use of the public, but was intended to apply exclusively to those laid out by the proceedings authorized by the act, in which lands could be taken without the owner's consent.

Where the evidence of a dedication of land by the owners, for a street, consists of clear, unequivocal and decisive acts of such owners, amounting to an explicit manifestation of their will to make a permanent abandonment and dedication of the land, which of themselves are sufficient to establish a dedication, without any intermediate period, if the land dedicated is unequivocally used and occupied for any continuous period of time, by the public at large, that will amount to an adoption of the dedication. But the user, in such a case, ought to be for such a length of time that the public accommodation, and private rights, might be affected by a revocation.

The proprietors of a tract of land caused the same to be surveyed, in December, 1826, and a map thereof to be made, laying out the same into village lots and streets, including certain land designated thereon as Burns street; which map was signed by them and recorded in the county clerk's office, in September, 1827. There was evidence tending to show a continuous use of Burns street as a public highway, from 1832 to 1865. Most of the travel proved was confined to that portion of the street which was necessary for transit from a street on the east to another on the west side of Burns street, yet for that purpose the line of travel was not directly across the latter street, but it was necessary to turn into that street and go along it a distance of from twenty-five to seventy feet, before turning into either of such other streets. For aught that appeared, Burns street was open its whole length, as mapped, and the testimony tended to show that for some distance it was fenced. In 1853, I. claiming title to the premises, erected a house thereon. Such house did not block up the street, but merely encroached upon it, and the travel went on, as before.

*Held* that under these circumstances the jury were justified in finding an *acceptance* of the dedication, by *public user*.

In 1858 the common council of Rochester, in which city Burns street was situated, caused the obstructions that had been placed in the street by I. and those claiming under him to be removed, with their consent, and the street to be improved; since which time it had been used as a street, until the plaintiff put up a fence on it; which the defendants tore down. I. was told, when he put up the house, that it was on the street. He admitted that it was, and said that if the street was ever improved, the house would have to be removed; and he set it on blocks, and made no cellar under it.

McMannis *v.* Butler.

*Held* that the action of the city authorities, in 1858 was a clear *acceptance* of the dedication, even if the previous user was not.

*Held, also,* that the question of revocation by I. of the dedication was one of fact, depending on the circumstances of the case; and that the jury were authorized to find, upon the testimony, that his acts were not intended by him as a revocation, and did not amount to it.

*Held, further,* that I. could not revoke the dedication unless he had succeeded to the title of the original proprietors.

Where the grantee in a quit-claim deed acquires, thereby, only an undivided portion of the interest of the original proprietors in land previously dedicated as a street, and his deed refers to the map on which such land was so dedicated, it may well be questioned whether the grant to him is of any thing more than the fee subject to the public easement.  *Per* J. C. SMITH, J.

Whether the owner of an undivided portion of the estate can revoke a dedicacation made by the owners of the whole, prior to the grant to him.  *Quære.*

APPEAL by the defendant from an order made at a special term, granting a new trial. The facts sufficiently appear in the opinion of the court.

*E. A. Raymond,* for the appellant. The questions to be considered on this appeal, are :

1st. Whether the evidence tended to show that the piece of land, designated as Burns street, on the map made and filed by Charles Perkins and David McCracken, in December, 1826, they being then the owners of the large tract of land described on said map, became a public highway prior to 1853.

2d. Whether, if it had not become such highway prior to 1853, Milton Ingersoll revoked the dedication of it to the public, by his acts in 1853.

I. The verdict is sustained by the evidence, particularly under those portions of the charge of the court found at folios 120, 121, 122. 1. It was opened and used as a street. 2. "It was used and occupied for a continuous period of time by a distinct and unequivocal use of it on the part of the public at large, to wit, from 1832 to 1853." 3. There was no opposing evidence offered by the plaintiff. 4. The street from the east line of lots 1 and 2, as laid down

on the map, to the ridge dividing it from Factory street, was about 35 to 40 feet in width. The fence ran on the east side of lots 1 and 2 as it now does. The ridge was from six to twelve feet high at the intersection of Champion street with Factory street, and so diminished to a point opposite the south end of lot two. People passed from Champion street down to Factory street, with and without loads, over Burns street, so far south, and then turned into Factory street. It was so used both in going and returning, and also in going from Perkins street to Champion street. After Ingersoll removed his little shanty on to Burns street, opposite the south end of lot two, in 1853, as shown on the diagram, there was a space from ten to twenty feet east of the shanty, and three or four rods south of it and extending to Champion street, which teams used in passing between the aforesaid streets. There was no fence on the east side of the house, running in either direction. The house was twelve by sixteen feet in size, so that not over one half the width of Burns street was occupied by Ingersoll. The street itself, as represented on the map, did not extend over about twelve rods south of Champion street. Therefore, *before* this shanty was put there, the public used the street in its entire length, and so much of its width as was necessary; and *afterwards* such use continued as before upon all the ground not occupied by it. 5. The use was for such a length of time, and under such circumstances of location, &c. "that the public accommodation would be seriously affected by a revocation of the dedication." There was no possible way of using Champion street except by the use of Burns street. The latter was not merely a *convenience*, but a *necessity*. It was also open and used as a street north of Champion street. The jury have found these facts by their verdict, and the evidence leads to no other conclusion.

II. The following sentence in the charge of the court was incorrect, viz. "that it was not a sufficient user of this

piece of ground to make it a public highway, to cross it, or in going from Champion street to Factory street, to turn down through it, or to use it as a practical extension of Champion street, but that the jury must find it was used its entire length as a street." (*Holdane* v. *Trustees, &c.,* 21 *N. Y. Rep.* 479. *People* v. *Kingman,* 24 *id.* 559.) A *cul de sac,* or a road terminating on a bluff, or stream of water, may be a public highway. Whether this strip of ground was used as a practical extension of Champion street or not, is immaterial, if it was used by the public as a highway. The latter is the only question to be determined. The last clause of this portion of the charge, viz. " not that every part and parcel of the street must be used, but it must be used and regarded as a street," was correct.

III. The charge and decision of the court " that the statute of 1813, (*ch.* 33, *Laws of* 1813,) is applicable to this case, and that this street must have been opened and worked within six years after its dedication to make it a public highway; and that if not so opened and worked it ceased to be a highway," was incorrect.

The act of 1813, chapter 33, section 23, is not applicable to this case. 1. It applies only to highways in towns, as distinguished from incorporated cities or villages. 2. Section 23 refers only to public highways, theretofore laid out by commissioners of highways, or by some public authority. This is evident from the general provisions of the act and from section 24, which recognizes a distinction between highways that had been laid out and roads which had become such by user for twenty years. 3. The Revised Statutes, (*vol.* 2, *p.* 394, *5th ed. p.* 521, *margin,* § 99,) refer only to highways laid out by some public authority. (*See also* § 100.) 4. This section, as amended by chapter 311, of the Laws of 1861, recognizes for the first time, a dedication of a highway to the use of the public. It is to a certain extent a legislative construction

McMannis *v.* Butler.

of previous statutes, as not embracing highways which had become such by dedication and user. 5. The term "opened," in all these statutes, means only the removal of obstructions from the land designed as a highway. 6. The land in controversy in this action was dedicated in 1826, by the owners of the public for a highway. If accepted by public user, within the decisions of the courts on this subject, it became by such dedication and acceptance, a highway, whether laid out by public authority, or worked within six years or not. It was unnecessary to open it, for there were no obstructions to remove. It was already open. 7. The village of Rochesterville was incorporated in 1817. (*Chapter* 96, *Laws of* 1817.) Its trustees were authorized to act as commissioners of highways, (§ 5.) See, also, the following acts, relating to the village of Rochester: *Chapter* —, 1826; *Chapter* 120, 1828.) In all of these acts, control over the highways, within the limits of the village, was conferred upon the trustees as commissioners of highways, and the highway acts of the state were so far superseded. 8. The city of Rochester was incorporated April 28, 1834, (*Laws of* 1834, *ch.* 140.) The common council were constituted commissioners of highways, with exclusive control over the streets and highways within the city. And the streets designated on previous plots of the village of Rochester, or parts thereof, were declared to be public highways. (§§ 20, 21.) A municipal corporation is governed by its charter, in all matters to which it extends. (*Mayor, &c. of Troy* v. *The Mutual Bank*, 20 *N. Y. Rep.* 387.)

IV. The charge that "if Burns street was not a public highway, so as to make these mortgages void, then the plaintiff was in the assertion of a right which he may maintain, and of which he could not be divested by force," was erroneous.

The question is not whether the mortgage of the Eagle Bank was void by reason of its being given upon land in

which the public had acquired an easement. The fee undoubtedly remained in the original proprietors, and Ingersoll's mortgage conveyed, if any thing, an undivided eighth, subject to the easement.

V. The court erred in refusing to decide and charge as requested by the defendants' counsel, at folios 126–129. The conveyance of William J. McCracken to Milton Ingersoll, by quit-claim deed, in 1850, was not designed and did not have the effect to convey to him, more than one undivided eighth of the land embraced within the exterior lines described in said deed, subject to the right of the public, in all the highways within their limits. 1. The words of description, "pieces, parcels and fractions of land," show that the grantor conveyed only such parcels of land as were not streets, either in actual use, or as indicated on the map referred to. 2. The reference to the map, by which the land in question was dedicated as Burns street, is also evidence of the same fact. 3. Milton Ingersoll did not therefore acquire title to any part of Burns street, divested of the easement of the public. 4. The Eagle Bank, by its mortgage, acquired no better title. 5. The plaintiff, by assignment and foreclosure, acquired no better title than the bank. By referring to the map in his deed, McCracken made it a part of it, and Ingersoll so accepted it. (*Bissell* v. *N. Y. Central R. R.*, 23 *N. Y. Rep.* 61. *Glover* v. *Shields*, 32 *Barb.* 374.)

VI. Milton Ingersoll, as one of the tenants in common of the premises in question, could not revoke the dedication made in 1826 by the original owners of the land. 1. At most he could revoke it only on behalf of himself. 2. The other seven heirs of David McCracken have never revoked the dedication of their ancestor. This is binding on them until revoked. As the dedication was unquestionably accepted by the action of the common council of the city of Rochester, in improving the street in 1857, it became then binding upon said heirs and their grantees,

McMannis v. Butler.

if not before, and they were estopped from asserting their title in hostility to the easement of the public, at any time thereafter. In the enjoyment of this easement, the plaintiff could not disturb his co-tenants, or their grantee, whom the defendant represented. One co-tenant cannot revoke a dedication or license made by his co-tenants in relation to the land held in common, (8 *Wend.* 505,) nor enter upon his co-tenant and oust him. (7 *Cowen,* 229.) 3. Neither the original owners nor their heirs, could have revoked the dedication in 1853, or at any subsequent time. (*People* v. *Kingman,* 24 *N. Y. Rep.* 560. *Holdane* v. *Trustees, &c.* 21 *id.* 479, 480. *Hunter* v. *Trustees, &c.* 6 *Hill,* 407, 412. *Cincinnati* v. *Lessee of White,* 6 *Peters, U. S.* 431. *Child* v. *Chappell,* 5 *Seld.* 256, 258.) After the lapse of twenty-seven years, and the use of the street more or less during that time, they were all estopped from excluding the public from the enjoyment of an easement, which had become a necessity. 4. Ingersoll did not revoke it. He occupied only the west half of the street, with a temporary structure, admitting that the land was a street, and recognizing the rights of the public. The Eagle Bank stood in no better position. The plaintiff is the first one who has attempted to obtain exclusive possession of the whole street. If the dedication had not been accepted by the public, then the fee of the land is in the eight co-tenants, and this plaintiff as one of them cannot maintain an action for trespass. All should unite. (13 *John.* 286. 14 *id.* 426. 15 *id.* 479.)

VII. The court erred in refusing to charge and decide as requested by the defendant's counsel, "That the Eagle Bank took its mortgage from Milton Ingersoll, with notice of the original dedication, of the extent of his interest, and of the character of his possession, of the situation of the premises with reference to their use by the public for a highway, and of the use thereof by the public, and also

with notice on the mortgage itself that the land. was in the street."

The Eagle Bank took its mortgage with notice of the following equities : (1.) The original dedication as shown by the map. (2.) The user by the public. (3.) The extent of Ingersoll's interest, one undivided eighth. (4.) His occupancy of only the west half the street, and the temporary character of that occupancy. (5.) The situation of the premises with reference to the use by the public, the fences, buildings, &c. (*Cook* v. *Travis*, 22 *Barb.* 338. 5 *N. Y. Legal Obs.* 334.)

VIII. The court erred in refusing to charge and decide as requested by the defendant's counsel, "That the plaintiff took his assignment of said mortgage with like notice, and also with notice of the improvement of the street, and expenditure of public money thereon by the city authorities in 1858, and of the use of the street since that time, and the acquiescence of the bank until 1864, or six years."

The plaintiff took his assignment with notice of all those facts, and also with notice of the improvement in 1858, and of the use of the street since then, together with the admission of the bank that the land was a street by the indorsements made on it at the time he received it. (*Williamson* v. *Brown*, 15 *N. Y. Rep.* 354. *Devenpeck* v. *Lambert*, 44 *Barb.* 598. 41 *id.* 130.)

IX. There being evidence tending to show a dedication and acceptance of the land in question as a street, which was not contradicted, the verdict of the jury should not have been set aside.

*J. C. Cochrane,* for the respondent. I. The defendant claims that the premises became a public street by dedication. There is no evidence of any acceptance of the street by the public until 1858, when the city authorities undertook to open it. For many years before that time

the alleged street was fenced and occupied, and the right to accept no longer existed. (1 *R. S. Edm. ed.* 480. *The City of Oswego* v. *Oswego Canal Co.*, 2 *Seld.* 257.)

II. The practice of turning out of the line of Champion street to get into Factory street, was not an acceptance of Burns street. (*Holdane* v. *Trustees of the Village of Cold Spring*, 21 *N. Y. Rep.* 474.)

III. The defendant tore down the fences at both ends of the lot, at places never used by the public.

IV. If the plaintiff is in by right, his possession is that of all the owners, *prima facie.* Even if not so, he has a right to maintain this action, in respect to his own interest.

*By the Court,* JAMES C. SMITH, J. This was an action for trespass on lands. The defendant justified, as street commissioner of the city of Rochester, claiming that the premises were a public street. The cause has been tried twice. On the first trial, the jury, under the direction of the court, rendered a verdict for the defendant, which was set aside at general term. (49 *Barb.* 176.) On the second trial, the case was submitted to the jury, and resulted in a verdict for the defendant. A motion was made for a new trial, on the judge's minutes, which was granted, and an appeal was taken from the order, on which the cause now comes on to be heard.

The plaintiff proved that the premises in question were conveyed by William J. McCracken to Milton Ingersoll, by quit-claim deed, dated the 14th November, 1850; that soon afterwards, Ingersoll placed a house on the premises and rented it; that on the 8th August, 1857, he executed a mortgage, which was assigned to the plaintiff on the 21st February, 1865, and foreclosed, and the premises bid in by him on the 20th May, 1865; and that the plaintiff was in possession in the spring of 1865, when the defendant tore down the fences. The deed to Ingersoll referred

to a map of McCrackenville, made by John Barbeau, as surveyor, December 18, 1826. The defendant proved said map, which was signed by David McCracken and Charles Perkins, who were admitted, by the plaintiff, to have then been the proprietors of the tract, and was recorded in Monroe county clerk's office, the 18th September, 1827. The tract covered by the map was laid out thereon into village lots and streets, and the premises in question were included in what was designated on the map as a street, called Burns street, which was adjoined on the west by several of said lots, and which was intersected by Brisbane, Champion and Perkins streets on the west, and Factory street on the east. It was admitted, that David McCracken died, in 1842, intestate, and leaving eight heirs at law, of whom the said William J. McCracken was one. The defendant then examined several witnesses, whose testimony, he claimed, tended to show that Burns street, or a portion of it, as laid down on the map, was used as a public street, continuously, from 1832 to the time when Ingersoll erected the house, which was about the year 1853; that the house occupied but a part of the width of said street, and the part not so occupied, continued to be so used until the year 1858, when the public authorities of the city of Rochester, having charge of the streets, tore down said house, with the consent of Ingersoll or his agent, and worked and improved the street, including the premises in question, and had the same under their control until the plaintiff took possession in the spring of 1865. The testimony in respect to its use by the public, showed that it was principally used as a means of passage between Factory street on the east, and Perkins and Champion streets on the west, and that the portions of the street not necessarily traversed in such passage, were used but very little, if at all. The premises in question were situated between Perkins and Champion streets, and nearly opposite the point where Factory street entered Burns. They were

necessarily crossed in going from Perkins street to either Champion or Factory street by way of Burns, and there was evidence tending to show that in going from Champion to Factory street it was necessary to traverse a part of the premises in question.

The judge charged the jury that the acts of the proprietors in plotting the ground and recording the map, constituted a proposed dedication of all the ground specified as streets to the public; that if the street was formally accepted by the city authorities, or if it was open and used as such by the public, that was an acceptance of such dedication; that the proprietors could revoke the dedication at any time before the public had acquired rights to the proposed street by some corporate or official act, or by user; that the user in such case ought to be for such a length of time that the public accommodation and private rights might be affected by a revocation; and that if Burns street was used and occupied for any continuous period of time, by distinct and unequivocal use of it on the part of the public at large, then it would become a street, and that would amount to an adoption of the dedication.

The court further charged that it was not a sufficient user of this piece of ground to make it a public highway, to cross it, or in going from Champion to Factory street to turn down through it, or to use it as a practical extension of Champion street, but that the jury must find it was used its entire length as a street; not that every part and parcel of the street must be used, but it must be used and regarded as a street.

The court further charged that the statute of 1813, (2 *R. L. p.* 277, *ch.* 33, § 23,) is applicable to this case, and that the street must have been opened and worked within six years after its dedication, to make it a public highway, and that if not so opened and worked, it ceased to be a highway.

The two portions of the charge last above stated, were excepted to by the defendant's counsel.

Upon the case stated, it is obvious that the question raised by the motion for a new trial, and involved in this appeal, is whether the testimony, in any proper view of it, warrants the conclusion that there was, at any time, an acceptance, by public user or official action, of the proposed dedication. But before discussing that question it is necessary to decide upon the correctness of the charge, that the street must have been opened and worked within six years after its dedication, to make it a public highway, as if that instruction is right, it limits the discussion to a very narrow range.

The statute of 1813, on which the charge was based, was in these words : " If any public highway, already laid out, or hereafter to be laid out, shall not be opened and worked within six years after the passing of this act, or from the time of its being so laid out, the same shall cease to be a public highway or road for any use, intent or purpose whatsoever." The act, of which this provision is a part, is entitled " An act to regulate highways," and it contains general provisions respecting the duties of town commissioners of highways, and among other things, as to the laying out of public highways, but it does not speak of highways dedicated to the public use. The language of the section above transcribed, as well as the context, very plainly indicates that the provision had no relation to highways dedicated by the owners themselves to the use of the public, but was intended to apply exclusively to those laid out by the proceedings authorized by the act, in which lands could be taken without the owner's consent. (It appears to have been passed upon the idea, that in the case of a highway laid out by proceedings *in invitum*, it was but just that the land should revert to the owner, if not used by the public as a highway in a reasonable time, and the limit of such reasonable time was fixed at six

years; whereas, in the case of a highway by dedication, there was no need of such a provision, as the proprietor could revoke the proposed dedication, at any time before acceptance by the public.) The section was adopted in the revision of 1830, (1 *R. S.* 520, § 99;) and has continued without material alteration, until 1861, when it was amended, in several respects, and among others, by inserting after the words "already laid out," the words "and dedicated to the use of the public." This is a very explicit declaration by the legislature, that in their opinion the original section did not cover the case of a highway by dedication. Whether the section, in its present shape, applies to highways, by "dedication" in the technical sense of the term, may admit of a question, but it does not arise in this case, and therefore will not be considered.

The statute of 1813, being inapplicable to the case, the question to be considered is, whether there is any evidence of an acceptance of the dedication. It may be examined under two heads. (1st.) Public use. (2d.) Formal acts of the officers of the corporation.

In determining whether there is sufficient evidence of user to amount to an acceptance, it is to be borne in mind that this is not a case in which it is necessary to show an acquiescence on the part of the owner, in the free use and enjoyment of the way as a public road, for a sufficient length of time, to raise the presumption of a grant or dedication. The evidence of a dedication consists of clear, unequivocal and decisive acts of the proprietors, amounting to an explicit manifestation of their will to make a permanent abandonment and dedication of the land, which of themselves, are sufficient to establish a dedication, without any intermediate period. Under such circumstances, (to quote from the charge of the judge,) "if the land dedicated, was used and occupied for any continuous period of time, by distinct and unequivocal use of it on the part of the public at large, that would

McMannis *v.* Butler.

amount to an adoption of the dedication," or, as was also said in the charge, "the user in such case ought to be for such a length of time, that the public accommodation and private rights might be affected by a revocation."

In view of these rules, it can hardly be held as matter of law that there was no evidence whatever before the jury, of an acceptance by public user. There was abundant testimony, tending to show a continuous use of Burns street as a public highway, from 1832, to the very time of the erection of the fence in 1865, the removal of which is the alleged trespass complained of. It is said, however, that most of the travel proved, was confined to that portion of the street which was necessary for transit from Champion to Factory street. That is true ; but for that purpose, the line of travel was not directly across Burns street. It was necessary to turn into that street, and go along it a distance of from twenty-five to seventy feet, according to the various estimates of the witnesses, south of the south line of Champion street, before turning into Factory street. Besides, for aught that appears, Burns street was open its whole length, as mapped, and the testimony tends to show that for some distance, it was fenced out, and that other portions of it besides that lying between Champion and Factory street were used as occasion required. The structures erected by Ingersoll did not block up the street; they merely encroached on it, and the travel went on as before. That portion of the street, which constitutes the *locus in quo*, was used as a highway continuously until 1853, when Ingersoll put his house on it, and subsequently that part of the premises not occupied by him, continued to be so used till 1858, when the house was removed by the city authorities, with his consent. Under these circumstances, the jury were justified in finding an acceptance of the dedication by public user. The testimony, instead of showing that Burns street was

used as a mere continuation of Champion street proves the existence of the former street as conclusively as that of the latter, or of any other street in the map. There may have been less travel on Burns street than on either of the others, but that circumstance goes merely to the weight of the testimony.

As to the formal action of the corporate authorities, the testimony shows that in 1858, the common council caused the obstructions that had been placed in the street by Ingersoll and those occupying under him to be removed with their consent, and the street to be improved, since which time it has been used till the plaintiff put up his fence. It is claimed by the plaintiff that this action of the city did not operate as an acceptance, for the reason that Ingersoll by occupying the street years before, had revoked the dedication. Ingersoll could not revoke, unless he had succeeded to the title of the original proprietors. By the quit-claim deed from William J. McCracken, he acquired only one undivided sixteenth, or at most one eighth of the interest of McCracken and Perkins to the premises therein described. His deed referred to the map on which the land in question was dedicated as Burns street, and it may well be questioned whether the grant to him was of any thing more than the fee subject to the public easement. But passing that question, and also the point whether the owner of an undivided portion of the estate, could revoke a dedication by the owners of the whole, it is manifest that the question of revocation by Ingersoll, is one of fact, depending on the circumstances of the case. The jury were authorized to find, upon the testimony, that the acts of Ingersoll were not intended by him as a revocation, and did not amount to it. He was told when he put up the house, that it was on the street; he admited that it was, and said that if the street was ever improved, the house would have to be removed, and he set it on blocks, and put no cellar under it. The verdict

has settled this question in favor of the defendants, and that being the case, there is no answer to the position that the action of the city authorities in 1858, was a clear acceptance of the dedication, even if the previous user was not.

For these reasons the order granting a new trial should be reversed, and judgment should be ordered for the defendants, on the verdict.

All the judges concurring,

Ordered accordingly.

[MONROE GENERAL TERM, June 1, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]