The City of Cohoes, Appellant, *v.* The President, Managers and Company of the Delaware and Hudson Canal Company, Respondent.

The Same, Appellant, *v.* The Same, Respondent.

Aside from the method prescribed by statute, public highways may be created in the following ways: by prescription, as where land has been used by the public as a highway for twenty years with the knowledge, but without the consent of the owner; by dedication through offer and implied acceptance, or where the owner throws open his land intending to dedicate it to the public, and the latter use it for such a length of time that they would be seriously inconvenienced by an interruption of the enjoyment; by dedication through offer and actual acceptance, or where the owner throws open his land, and by acts or words invites acceptance, and the public authorities in charge formally or in terms accept it as a highway.

An offer to dedicate may be qualified or made subject to a certain condition, and if it is accepted *cum onere*, the land becomes a highway subject to the burden.

The owner has no power after acceptance to increase the burden or to revoke the dedication.

Where a highway is once shown to exist it is presumed to continue until it is shown to exist no longer.

Where, therefore, a person invokes the aid of the statute of 1861 (Chap. 311, Laws of 1861), declaring that a public highway laid out and dedicated which shall not have been opened and worked within six years after the time of its being laid out shall cease to be a highway, the burden is upon him to show that his case is within its provisions.

In actions to restrain defendant from laying tracks and erecting buildings upon land claimed by plaintiff to be one of its streets, it appeared, and the court found, that prior to 1853 the land had become a highway by dedication. In that year a railroad company, to whose rights defendant succeeded without the consent, so far as appeared, of the owner of the land or of plaintiff, laid down tracks along the easterly side of the street, occupying all but thirty feet of its width, and also built a freight-house at one end of the street, entirely obstructing the street at that end. After the tracks were laid teams and vehicles passed along the street west of the tracks, and after the freight-house was built they passed to the west of it over a vacant lot outside the line of the street, still continuing to use the unobstructed portion of the street. In 1883 defendant obtained from the original owner of the premises a quit-claim deed of the rights and interests it had in 1853, "if any, in the land covered by said alleged * * * street." In 1885 defendant commenced

laying an additional track in the street. About 1887 the freight-house was torn down and defendant began the construction of a new one occupying more of the street. *Held*, that the actions were maintainable. It was claimed by defendant that the actions were not maintainable because plaintiff's mayor and common council had not determined the width of the street according to the use that had been made of it, as required by the provision of the statute making it the duty of highway commissioners to cause roads laid out, but not sufficiently described, and those used for twenty years but not recorded, to be ascertained, described and entered on record. (1 R. S. 501, § 1, subd. 3.) There was no finding or evidence that it had not been complied with. *Held*, that conceding the statute applies to incorporated cities (as to which, *quære*), it was to be presumed that the city officials had performed their duty.

*City of Cohoes* v. *D. & H. Canal Co.* (54 Hun, 558), reversed.

(Argued June 7, 1892; decided October 1, 1892.)

APPEAL in each action from a judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 10, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The action first above entitled was commenced December 27, 1885, to restrain the defendant from laying an additional railroad track in an alleged public street of the city of Cohoes, without the permission of the proper authorities. The defendant denied that the so-called street was ever a public highway, and alleged that it had duly acquired from the owner of the fee of the strip of land in question the right to use the same for its tracks and for railroad purposes.

The original proprietor of the land within the boundaries of the city was the Cohoes company, which acquired title to the same November 5, 1833. Upon a map of the then village of Cohoes, known as the Olmstead map, made in July, 1835, and since 1857, at least, kept at the office of said company, the land in question was designated as Van Rensselaer street. A copy of said map, numbered 175, was filed in the Albany county clerk's office, bearing "upon the margin thereof the words and figures, ' July, 1835,' and the official index-book of maps kept in said office, indicates the date of making said map to have been July, 1835." On December 28, 1847, the

Cohoes company conveyed a lot fronting on said street according to the lot number as designated on the map so "filed in the office of the city and county of Albany," and in the description, named " the northwest corner of Ontario and Van Rensselaer streets " as the starting point. Another map of said village, dated 1845, made by the engineer of the Cohoes company, known as the Frost map, designates the land in question as Van Rensselaer street, and upon all of said maps the same territory is laid down as a street under that name, eighty feet wide, extending southerly from the Mohawk river to Mohawk street and crossed nearly at right angles by Oneida, Ontario and Pine streets in the order named. A canal about thirty feet wide is designated upon each of the maps as extending on the westerly side of Van Rensselaer street from Mohawk to Ontario street, where it turns to the west and continues for several blocks until it reaches a larger canal. A similar canal is also laid down on the west side of Van Rensselaer street for a part of the distance between Ontario and Oneida streets. The business of the Cohoes company is the leasing of water-power for manufacturing purposes, and it has many canals, used to distribute the water, located in, along and under the streets, arched over in places for safety and convenience. No canal, however, has at any time actually existed along Van Rensselaer street, except on paper. Said maps included the land of the Cohoes company and showed the streets and building lots, duly numbered, and mill sites into which its property was divided and from time to time said company conveyed lots referring to the maps for further description. December 28, 1847, it thus conveyed a lot "beginning at the northwest corner of Ontario and Van Rensselaer streets, running thence northerly 100 feet." January 1, 1858, it conveyed another lot, " beginning at a point in the west line of Van Rensselaer street 100 feet northerly from the corner of Ontario street." One of the courses runs to the " westerly line of Van Rensselaer street." August 20, 1861, it conveyed a third parcel " known    *    *    *    as lots Nos. 21 and 23 " according to the " map    *    *    *    made by James

Frost," two of the courses being given as follows: "Running thence easterly along said line of Ontario street to the west line of Van Rensselaer street and thence along that line southerly 200 feet." These conveyances were respectively recorded January 25, 1849, November 30, 1885, and July 25, 1871. In 1845, when the Frost map was made, monuments were placed along the sides of Van Rensselaer street "as then surveyed and as so laid down on said map, at the corners of intersecting streets, some of which still remain." In 1853, the Albany and Northern Railroad Company, to whose rights the defendant has succeeded, laid three tracks along the easterly side of Van Rensselaer street for its entire length, thus occupying about fifty feet in width, or all of the street except a strip thirty feet wide on the westerly side. The map of the route of said railroad company filed August 16, 1853, "locates, lays down and designates Van Rensselaer street precisely as the other maps above mentioned." In 1853 the said railroad company built a freight-house near the corner of Oneida street, about fifty-two feet long and extending entirely across that part of Van Rensselaer street not occupied by the tracks, so as to completely obstruct the street at that point. It continued there and was used for railroad purposes until 1886 or 1887, when it was torn down.

From a period beginning as early as 1845 and continuing until said tracks were laid "people having occasion to travel that way passed with teams and vehicles over the line of Van Rensselaer street about where the tracks" were placed. After that, "teams and vehicles passed along said street to the west of the railroad tracks and after the freight-house was built, to the west of that over a vacant lot outside of the line of the street and upon passing the freight-house, turned into the street again."

The people were also accustomed to drive on the west side of Van Rensselaer street to and from the freight-house for the purpose of delivering and receiving freight and express matter. In June, 1874, the plaintiff's common council duly adopted a resolution "that Van Rensselaer street from Oneida

street south to its intersection with the Mohawk street be and hereby is declared a public highway and that the same be graded." The resolution also provided for the service upon abutting owners of a notice to show cause why the grade should not be established and the street graded.

At various times between 1879 and 1885 the superintendent of streets filled up the holes and ruts on Van Rensselaer street and did some other work thereon, mostly upon his own motion, but partly pursuant to the directions of the chairman of the street committee of the common council. It does not appear when the village of Cohoes was organized, but it was recognized as an incorporated village by an act passed in 1849. (Laws of 1849, chap. 314.) The city was incorporated in 1869. (Laws of 1869, chap. 912.)

In 1883, the defendant obtained from the Cohoes company a quit-claim deed "of all the rights and interest which the said company" had in 1853, "if any, in the land covered by said alleged Van Rensselaer street."

It is provided by plaintiff's charter (Laws of 1869, chap. 912, tit. 3, § 32), that violations of ordinances, passed in behalf of the plaintiff, may be restrained by injunction. In November and December, 1885, when the defendant, without permission, attempted to excavate Van Rensselaer street for the purpose of laying another track on the west side thereof, and the first action was commenced to restrain such acts, there was a city ordinance in force prohibiting all persons from digging up or obstructing any of the streets of the plaintiff without first obtaining the written consent of its mayor.

The old freight-house having been removed in 1887, the defendant, without permission, began to excavate on the west side of Van Rensselaer street, thirty-four feet south of the south line of the former freight-house, and thirty feet north of the north line thereof, for the avowed purpose of building a new freight-house.

The second action was commenced in December, 1887, to restrain the defendant from thus interfering with and obstructing the alleged street.

SICKELS—VOL. LXXXIX.    51

The complaint in each action was dismissed by the trial court.

Further facts are stated in the opinion.

*E. Countryman* for appellant.

*Edwin Young* for respondent.

VANN, J. Public highways may be created in four ways:

1. By proceedings under the statute. (2 R. S. [8th ed.] p. 1372 *et seq.;* also p. 1383, § 100.)

2. By prescription, or where land is used by the public for a highway for twenty years, with the knowledge, but without the consent, of the owner. The presumption of a grant of the right of way springs from the mere lapse of said period of time in connection with the adverse user by the public.

3. By dedication through offer and implied acceptance, or where the owner throws open his land intending to dedicate it for a highway, and the public use it for such a length of time that they would be seriously inconvenienced by an interruption of the enjoyment. This rests upon the principle that the owner is estopped from revoking his offer after the public have acted on it for so long a period that it would be a fraud upon them if he were permitted to do so. No particular length of time is required to effect such a dedication, as every case of an estoppel *in pais* necessarily depends upon its own facts.

4. By dedication through offer and actual acceptance, or where the owner throws open his land and by acts or words invites acceptance of the same for a highway, and the public authorities, in charge of the subject, formally, or in terms accept it as a highway. In the absence of an actual conveyance the owner does not part with his title to the land, but only with the right to possession for the purpose of a highway.

Although there has been some conflict of opinion upon the subject, we understand this to be the law as established by the weight of authority in this state. (*Flack* v. *Village of Green Island*, 122 N. Y. 107, 113; *Driggs* v. *Phillips*, 103 id. 77;

*People* v. *Loehfelm*, 102 id. 1; *Cook* v. *Harris*, 61 id. 448, 454; *Holdane* v. *Trustees of Cold Spring*, 21 id. 474; *McMannis* v. *Butler*, 51 Barb. 436; *Carpenter* v. *Grynn*, 35 id. 395; *Wiggins* v. *Tallmadge*, 11 id. 457; *Clements* v. *Village of West Troy*, 10 How. Pr. 199; *Ward* v. *Davis*, 3 Sand. 502; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407; *Denning* v. *Roome*, 6 Wend. 651; *Colden* v. *Thurbur*, 2 Johns. 424; Elliot on Roads & Streets, 119; Thompson on Highways, 65; Angell on Highways, § 144; Greenleaf on Ev. § 662; 2 Dillon Mun. Corp. § 491; 5 Am. & Eng. Encyc. 396.)

The same rule prevails in the Supreme Court of the United States, in the courts of most of the states, and in England. (*President, etc., of the City of Cincinnati* v. *White*, 6 Pet. 431; *Barclay* v. *Howell*, id. 499; *Buchanan* v. *Curtis*, 25 Wis. 99; *Marcy* v. *Taylor*, 19 Ill. 634; *Green* v. *Town of Canaan*, 29 Conn. 157; *Kennedy* v. *Le Van*, 23 Minn. 513; *City of Waterloo* v. *Union Mill Co.*, 72 Iowa, 437; *State* v. *Trask*, 6 Vt. 655; *Abbott* v. *Mills*, 3 id. 521, 526; *Hobbs* v. *Lowell*, 19 Pick. 405; *State* v. *Hill*, 10 Ind. 219; *Price* v. *Town of Breckinridge*, 92 Mo. 379; *Wolf* v. *Brass*, 72 Tex. 133; *Commonwealth* v. *McDonald*, 16 Serg. & R. 390; *Doe* v. *Jones*, 11 Ala. 64, 84; *Dovaston* v. *Payne*, 2 Smith's Leading Cases, 142, 153, note; *Rughby Charity* v. *Merrywather*, 11 East, 375, n.; *The King* v. *Inhabitants of Leake*, 5 Barn. & Ad. 469; *Lade* v. *Shepherd*, 2 Str. 1004; *Jarvis* v. *Dean*, 3 Bingh. 447; *Woodyer* v. *Hadden*, 5 Taunt. 126; *Regina* v. *Petrie*, 30 Eng. L. & Eq. 207.)

There are some cases holding otherwise, and others that have been supposed to hold otherwise, but upon examination it will be found that they depended on local statutes or special circumstances. (*Underwood* v. *Stuyvesant*, 19 Johns. 181; L. 1787, ch. 61, 88; L. 1797, ch. 43; L. 1799, ch. 70; *Oswego* v. *Oswego Canal Co.*, 6 N. Y. 257, 266; L. 1811, ch. 231.)

There are *obiter* remarks also scattered through the books showing that certain judges have held views at variance with the foregoing rule, but we do not regard it essential, in order to decide this case, to make specific reference to them, or to

analyze the authorities, for the learned counsel for the defendant, with great fairness, states the law substantially as we have stated it.

The trial judge found in the decision upon which judgment was entered, "that the Cohoes company, the original owners of the fee, in surveying, designating and laying down said Van Rensselaer street upon the aforesaid maps, selling said lots and allowing the same to be used, expressed an equivocal and qualified intent to permit such user as a public highway, subject to the right of revocation by said Cohoes company; that the action of the Cohoes company, permitting the defendant to lay its tracks and build its freight-house in said Van Rensselaer street and by other acts, expressed an intent to revoke said equivocal and qualified dedication of Van Rensselaer street for highway purposes before it was accepted by the city authorities, or by user by the public, or otherwise."

Upon the request of the plaintiff, the trial judge also found "that there has been a continuous user on the part of the public of the whole of said territory between Pine and Oneida streets since in or before the year 1845, except as the same was temporarily deflected by the laying down of said railroad tracks and the erection of said freight-house; that from 1845 down to the time of the commencement of this action, the public user of said Van Rensselaer street from Oneida to Pine street has been general, continuous and exclusive for all the purposes of a public street or highway; that the Cohoes company, the original owners of the fee, in surveying, designating and laying down said Van Rensselaer street upon the aforesaid maps, and opening, or allowing the same to be opened, for use, intended to and did dedicate the same as a public street or highway," and "that before the laying down of the railroad tracks in 1853, the dedication by the Cohoes company of said Van Rensselaer street between Oneida and Pine streets as a public street and highway had been accepted by the public by user and public travel thereon."

Upon the request of the defendant, the trial judge further found "that there never has been any dedication of Van

Rensselaer street for highway purposes; that there has never been an acceptance of the alleged dedication by the authorities, nor by user, and that there never has existed a public highway at the *locus in quo* by dedication and acceptance."

It is our duty to harmonize these findings so as to arrive at the real intention of the trial judge, if it is possible. (*Bennett* v. *Bates*, 94 N. Y. 354.)

We are unable, however, to reconcile the conflict, and as the presumption of regularity does not extend to the method prescribed by statute to aid a party in correcting errors on appeal, we are compelled to accept the finding that is most favorable to the appellant. (*Kelley* v. *Leggett*, 122 N. Y. 633: *Wahl* v. *Barnum*, 116 id. 87.)

In the further discussion of the subject, therefore, we shall assume that in 1853 Van Rensselaer street had become a highway by dedication. It is unnecessary for us to consider the effect of the action of the Cohoes company in designating canals upon the maps within the boundaries of the street, for that could amount to no more than an implied reservation of the right to construct the canals as thus located. No attempt has been made to exercise the right, and it is immaterial in this controversy whether it exists or not. An offer to dedicate land for the purpose of a highway may be qualified or made subject to a certain burden, and if it is accepted *cum onere*, the burden continues, but the land becomes a highway notwithstanding. After acceptance there is no power to increase the burden or to revoke the dedication, except according to the terms of the reservation, so that assuming that the Cohoes company had the reserved right to dig the canals, it had no other right and no general power of revocation. (*Ayres* v. *Penn. R. R. Co.*, 52 N. J. Law, 405; 48 id. 44; *State* v. *Society*, etc., 44 id. 502; *People* v. *Kingman*, 24 N. Y. 559; *Cornwell* v. *Commissioners*, 10 Exch. 771; *Le Neve* v. *Mile End Old Town*, 8 El. & Bl. 1054, *Fisher* v. *Prowse*, 2 Best & S. 770; *Mercer* v. *Woodgate*, L. R. [5 Q. B.] 26; *Arnold* v. *Blaker*, 6 id. 433; *St. Mary's, etc*, v. *Jacobs*, 7 id. 47; *Arnold* v. *Holbrook*, 8 id. 96; Angell on Highways, 151–156.)

After Van Rensselaer street became a highway by dedica-tion, whether burdened with the right to construct canals in it, or not, no action on the part of the original proprietor could deprive it of that character, for a highway, when once estab-lished, continues until discontinued according to law. (*Driggs* v. *Phillips*, 103 N. Y. 77; *Adams* v. *S. & W. R. R. Co.*, 11 Barb. 414; *Doe* v. *Jones*, 11 Ala. 63; 5 Am. & Eng. Encyc. 410.)

Moreover, there is no evidence of any attempt at revocation by the Cohoes company, prior to 1883, when it conveyed to the defendant the right " to use and occupy as a part of its railroad, for its tracks and for railroad purposes and uses that part of the land in said city, called, known and laid down on the Frost map as Van Rensselaer street."

It does not appear that the Cohoes company ever consented to any act of occupancy of said street by the defendant or its predecessor prior to 1883. The construction of the railroad tracks and freight-house in 1853 was apparently without authority, and the Cohoes company after that date in convey-ing land, repeatedly recognized Van Rensselaer street, *eo nomine*, as an existing street. The utmost that can be said is that in common with the village authorities, the general public and the owners of lots abutting upon the street, it suffered the railroad to occupy.

It is claimed that the street ceased to exist as a highway before the commencement of this action by virtue of chapter 311 of the Laws of 1861, which provides that " every public highway and private road already laid out and dedicated to the use of the public that shall not have been opened and worked within six years from the time of its being so laid out, and every such highway hereafter to be laid out that shall not be opened and worked within the like period, shall cease to be a road for any purpose whatever."

It is not important to consider whether this statute applies to a street in a city or to a case of continuous offer and user for about forty years, as in our judgment the burden of proof is upon the one who invokes the aid of the statute to show

that his case falls within its provisions, and that burden was not met by the defendant upon the trial of these actions. (*In re Woolsey*, 95 N. Y. 135; *Vanderbeck* v. *City of Rochester*, 46 Hun, 87.)

The trial justice found "that no portion of Van Rensselaer street has ever been worked within the meaning of" said statute "prior to June 4, 1880, or within six years after the resolution of acceptance of said city." To this finding the plaintiff excepted and thus raised the question of law whether there was any evidence to support it. (*Halpin* v. *Phenix Ins. Co.*, 118 N. Y. 165.)

An examination of the record discloses no evidence upon the subject, except that from 1879 to 1885, some work was done upon the street by the city authorities. The finding can be sustained, therefore, only upon the theory that the burden of proof was upon the plaintiff to show affirmatively that an established highway was not abandoned by failing to work the same during the period named. This was no part of the plaintiff's case, but was matter of defense. When a highway is once shown to exist, it is presumed to continue until it is shown to exist no longer. (*Beckwith* v. *Whalen*, 65 N. Y. 322.) The presumption is in favor of continuance, not of cessation. "The burden of proof as to any particular fact lies on that person who wishes the court to believe in its existence, unless it is provided by any law that the burden of proving that fact shall lie on any particular person." (Stephen's Law of Ev. 155; 2 Best on Ev. 364.) "When the existence of a person, a personal relation or a state of things is once established by proof, the law presumes that the person, relation or state of things continues ·to exist as before, until the contrary is shown, or until a different presumption is raised from the nature of the subject in question." (Greenl. Ev. § 41; 2 Stark. Ev. 590, 688; *Eames* v. *Eames*, 41 N. H. 177; *Brown* v. *King*, 5 Met. 173; *Peaslee* v. *Robbins*, 3 id. 164.) The authorities apply the principle to a partnership, a state of mind, seizin, disability and many other facts, which, when shown to exist are presumed to continue until the presumption

is rebutted. We think that the principle should be applied to the case of a public highway in existence as early as 1853 and in actual use ever since.

It is further claimed that the plaintiff cannot maintain this action because its mayor and common council have not determined the width of Van Rensselaer street according to the use that has been made of it.

This position is based upon that provision of the Revised Statutes which directs commissioners of highways "to cause such of the roads used as highways as shall have been laid out but not sufficiently described, and such as shall have been used for twenty years but not recorded, to be ascertained, described and entered of record in the town clerk's office." (2 R. S. [8th ed.] p. 1347, § 1, sub. 3; 1 R. S. 501, § 1, sub. 3.)

The trial justice appears from his elaborate opinion to have based the dismissal of the complaint wholly upon this statute and the act of 1861, already considered.

Even if the statute applies to the plaintiff, an incorporated city, there is neither finding nor evidence that it has not been complied with. A resolution of the common council adopted in 1874 and entered in the minutes of the city clerk, declared Van Rensselaer street a public highway "from Oneida street south to Mohawk street." The case shows nothing further upon the subject and it will not be presumed in the absence of evidence that public officers failed to do their duty.

Moreover, actions are expressly authorized by the charter of the plaintiff to restrain violations of its ordinances, one of which prohibited every person, etc., from digging up, or encumbering "any of the streets, alleys or any portion thereof, without the written consent of the mayor."

Even without the aid of a special statute it was long since held by high authority that a municipal corporation could prevent by injunction the erection of a nuisance upon lands dedicated to the use of its inhabitants. (*Trustees, etc., of Watertown* v. *Cowen*, 4 Paige, 510.)

Without further elaboration of our views, we think that upon the facts, as found by the trial court at the request of

the plaintiff, Van Rensselaer street became a public highway by dedication in 1853 and that it has never ceased to be such.

The judgment in each action should, therefore, be reversed and a new trial granted, with costs to abide event.

All concur, except FOLLETT, Ch. J., dissenting, PARKER, J., not voting and LANDON, J., not sitting.

Judgment reversed.