■ SUFFOLK COUNTY NATIONAL BANK OF RIVERHEAD, as Trustee of ETHEL B. FISHEL, Deceased, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 58133.)—Cross appeals from a judgment in favor of claimant, entered April 6, 1976, upon a decision of the Court of Claims. This claim arises out of the State's alleged destruction of claimant's right of access during construction of an extension to Sunrise Highway in the Town of Southampton, Suffolk County. Claimant owned 329± acres of vacant woodland. While there was no direct appropriation, claimant contends that the highway extension severed its only means of access by blocking both a paper road (Glover Boulevard) and another colonial road (Old Quogue Road). The Court of Claims found that Old Quogue Road did exist, that the State had destroyed use of the road as a means of access from claimant's property to Quogue-Riverhead Road (Route 113), and that this taking occurred on August 14, 1972. The court valued the property before the taking at $1,151,900 (329.114 acres at $3,500 per acre), using various comparables in the record with appropriate adjustments, both appraisers having found the same highest and best use: future development for industrial purposes. The court rejected claimant's appraiser's contention that the land without access had only nominal value (in this case, 10% of the before-taking value). It adopted the State's appraisal that the highest and best use

had not changed, and relied on certain comparable parcels with no direct access. After proper adjustments, the court found the after-taking value to be $822,800 (329.114 acres at $2,500 per acre). He awarded $329,100 in damages. We affirm the judgment in all respects. The State argues on this appeal that the Court of Claims erred when it found that Old Quogue Road existed and that it abutted on claimant's property. Claimant cross-appeals, contending that the award of damages was inadequate. To prove the existence of Old Quogue Road, claimant offered the testimony of Alden W. Young, a respected surveyor in the area, and enhanced his testimony with various ancient records, maps and surveys. The State did not directly contradict claimant's evidence, but sought to discredit it by raising certain inconsistencies. These inconsistencies did not persuade the Court of Claims that the road did not exist. Nor do they persuade us. The State makes several other legal arguments, alleging first that title to the road rested in abutting land owners and that it was subsequently abandoned by disuse (Highway Law, § 205). The State carries the burden to demonstrate the facts triggering application of section 205 of the Highway Law *(City of Cohoes v President, etc., Delaware & Hudson Canal Co.,* 134 NY 397, 406-407; *Hewitt v Town of Scipio,* 32 AD2d 734). This it has failed to do. In fact, the record would indicate, to the objective observer, that title remained in the Town of Southampton (see *Fink v Jagger,* 211 NYS2d 51). Nor has the State offered proof of an overt act by the town demonstrating abandonment *(New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo,* 200 NY 113; *Matter of Fusaro v D'Angelo,* 41 AD2d 567). By similar proof, claimant established that the road abutted its property, and by similar opposition, the State failed to prove otherwise. We, therefore, find that Old Quogue Road was an extant public highway at the time of the taking (here conceded to be Aug. 14, 1972) and that it did abut on claimant's property. We can find no error in the Court of Claims' computation of damages. It was proper to reject claimant's position that its land retained only nominal value after the taking. Claimant's own evidence demonstrated rapidly accelerating land values in the area. Land speculation was widespread. The record shows that there was an existing market for claimant's land. Claimant's failure to explore that market and present proof of values was properly condemned. We are satisfied that the Court of Claims diligently performed its duty in taking the limited data before it and reaching a fair value for the land. None of the comparables were identical, but they did exhibit the same qualities of limited access. All adjustments were explained and, in our view, were proper. Judgment affirmed, without costs. Greenblott, J. P., Sweeney and Kane, JJ., concur; Mahoney and Larkin, JJ., dissent and vote to reverse in the following memorandum by Mahoney, J. Mahoney, J. (dissenting). We agree with the majority that claimant established a legal access from his property over Old Quogue Road which access was cut off by the State's taking, leaving the property landlocked. We also agree that the Court of Claims' determination of the before-taking value of $1,151,900 should be affirmed. However, there is insufficient information in the record to support the $822,800 after-taking value found below. This after-taking value was based on the State's comparable Sales Nos. 4 and 6. These sales were of nearby property, the access to which had also been cut off by the Sunrise Highway Extension. Despite the absence of any legal access,* these compa-

---

* The State's appraisers testified there was some possibility of access for the comparable sales over the as yet unbuilt service road laid out on paper by the State along the Sunrise Extension. But since the subject property would also have access to

rable properties sold for $2,185 and $3,540 per acre respectively. These properties retained substantial value despite the loss of access because of the chance of buying contiguous property with access or the chance of selling to the owner of contiguous property with access or even the chance of acquiring an easement or fee strip across neighboring lands to access. The chance of acquiring access in one of these ways was apparently substantial in this region because much of the land was vacant and steadily increasing in value. Comparable Sales Nos. 4 and 6 objectively prove that, in this region, loss of access causes only a moderate reduction in market value. However, the record does not reveal the most important factor in determining to what extent Sales Nos. 4 and 6 are comparable, i.e., it does not describe the lands over which access might be acquired. The validity of these comparable sales cannot be assessed without a full description of the potential routes to access, including distance, terrain, and the number of intervening parcels, with respect to the subject property and the comparable sales. The matter should be remitted to the Court of Claims for a hearing, *de novo,* to determine the after-taking value.

the service road if built, in this respect the State's comparable sales are identical to the subject property.