1843.

Bogert
v.
Furman.

## Bogert *vs.* Furman and others.

By the foreclosure of a mortgage and the sale of the mortgaged premises, under the decree of the court of chancery, the interests of the several owners of the equity of redemption is converted into personal estate, and if any of the owners subsequently die, their interests in the surplus moneys must be distributed as personal estate, among their legatees and next of kin.

Where a person entitled to a portion of a fund in court had been dead more than twenty years, and had died under age, the court allowed the parties entitled as next of kin to the decedent to take the money out of court, without the expense of taking out letters of administration.

An error apparent upon the face of a master's report, in a matter of mere computation, may be corrected by the court, although no exceptions to the report have been filed.

Where the decedent dies intestate, leaving a mother and brothers and sisters, but no wife or children or descendants, and no father, the mother is entitled to an equal share of his personal estate with his brothers and sisters, and the children of a deceased brother, who take his share by representation. But if the mother be also dead, the whole will go to his brothers and sisters and the representatives of the deceased brother, to the exclusion of the grand parents and the uncles and aunts of the decedent.

And where the decedent dies intestate without leaving a wife or any issue, or a father or mother, or any brothers or sisters or maternal grand parents, but leaving a paternal grandmother surviving him, she is entitled to his whole personal estate, as his nearest of kin; to the exclusion of his uncles and aunts.

December 5.       THIS case came before the court upon the application of A. McCalla, to ascertain the rights and interests of himself and others in a fund in court, amounting to $2490, with the interest thereon from the death of the defendant, E. Furman the elder, who died on the 28th of October, 1842. The facts in the case, as ascertained by the report of Master Wheeler, were as follows : E. Furman the elder, widow of Josiah Furman the elder, was the grantee in fee of the mortgaged premises, at the time the decree of foreclosure in this cause was entered, in April, 1805, but in fact she was only entitled to dower in the equity of redemption. She held the residue in trust, one eighth thereof for each of her seven children, Josiah Furman the second, E. Furman the younger, Henry Furman, Jacob Furman, Joseph P. Furman, Richard Furman and Maria Furman, and one-sixteenth for each of her two grandchildren, George Furman

the younger and Josiah Furman the third, the children of her deceased son George Furman the elder. The fund in question, one-third of the surplus proceeds of the sale of the mortgaged premises, was by an order of June, 1805, directed to be brought into court and invested, and the income thereof to be paid to E. Furman the widow, for life, and the principal to be distributed among the parties entitled thereto at her death. In June, 1808, E. Furman the younger died unmarried and intestate, and no administration was granted upon her estate. In 1812 Henry Furman and Joseph P. Furman also died unmarried and intestate, and no one administered on their estates ; but it did not appear which of them died first. And in 1813 Josiah Furman the second died unmarried and intestate, leaving his mother and his sister Maria, and his brothers Jacob and Richard, and the two children of his deceased brother George, surviving him. In August, 1815, Jacob Furman, supposing he was only entitled to a fifth of the fund in court, conveyed the one-fifth of the fund to his uncle R. Furman the elder, who died in 1834, and administration on his estate was granted to E. R. Furman. The two grandchildren died previous to 1820, unmarried and intestate, and no administration was granted on their estates. But it did not appear which of them died first, although both of them survived their mother ; nor did it appear that they left any maternal grand parent. In March, 1820, R. Furman the younger assigned all his interest in the fund to Elias Baldwin, who died in 1825, and bequeathed his estate to his widow, who administered thereon, and afterwards sold her interest in the fund to G. E. Baldwin. In April, 1820, R. Furman the younger made another assignment of his interest in the fund to the petitioner McCalla ; who subsequently purchased out the interest of G. E. Baldwin, pending the litigation between them, before the master, as to which of them was entitled to R. Furman the younger's interest in the fund. Maria Furman, who married Mr. Francis, survived him and died in 1843, and her son G. W. Francis administered upon her estate. E. Furman the elder died before

Mrs. Francis, and by her will bequeathed to the latter all her property, and appointed her executrix. But Mrs. Francis died without having proved the will, and administration with the will annexed was subsequently granted to G. W. Francis.

By an order of reference, made upon the ex parte petition of McCalla, the master was directed to enquire and report who were entitled to the fund, and to give notice to all persons interested therein, by a publication in the public papers; and to report an abstract of the titles of the several persons interested in the fund to such fund, or to any part thereof, shewing the times when any persons interested therein had died, and who were their respective legatees, distributees, or next of kin at the times of their deaths respectively; to the end that upon the coming in and confirmation of his report the court might make such order in relation to the payment of the fund to the persons entitled thereto as should be just.

*J. A. Bayard*, for the petitioner McCalla.

*A. Taber*, for E. R. Furman, administratrix of R. Furman the elder, and for G. W. Francis, administrator of Maria Francis, and administrator with the will annexed of Elizabeth Furman the elder.

THE CHANCELLOR. By the foreclosure of the mortgage the equitable interests of the children and grandchildren of Elizabeth Furman the elder, in the equity of redemption of the mortgaged premises, were converted into personal estate. And the fund must be distributed, as such, among the legatees and next of kin of the several parties who from time to time became entitled to the same. The personal representatives of the several deceased parties are the proper persons to receive their shares and distribute them among the next of kin after the payment of their debts, if they owed any. But as all the deceased children, and grandchildren, whose personal representatives are not before the

court, died intestate more than twenty years since, and probably under age and out of debt, it would be a useless expense to require those who have succeeded to their rights, under the statute of distributions, to take out letters of administration upon their respective estates at this remote period of time.

The master has ascertained the facts substantially as directed by the order. But he has erred in attempting to apportion the fund among the several persons who are interested therein. For he appears to have proceeded in that respect upon the supposition that the fund in question was to be considered and treated as real estate, and to pass according to the law of descents, and that Elizabeth Furman the elder was not entitled to any part of the personal property of her children, and grandchildren, who died intestate and without issue in her lifetime. As the order of reference, however, did not direct him to apportion the fund, but merely to ascertain who were interested therein, and to report the facts, the court can make the proper order for distribution. For it is a mere matter of computation, upon the facts stated in the report. And where there is an error apparent upon the face of the report, in a matter of mere computation, it may be corrected by the court, although no exceptions have been filed. (*Hawkins* v. *Day*, 1 *Ves. sen.* 189. *White's ex'rs* v. *Johnson*, 2 *Munf. Rep.* 285. 1 *Barb. Ch. Pr.* 557.)

1 have before said that the fund in question was personal estate, from the time of the sale under the decree in 1805. And upon the death of Elizabeth Furman the younger, in 1808, without issue, her mother became entitled to a distributive share in her portion of the fund, in common with her six surviving brothers and sister, and the two children of G. Furman who took by representation the share which their father would have been entitled to if he had then been living. (1 *R. L. of* 1813, *p.* 314, § 16.) So upon the death of each of the widow's three sons, who died in 1812 and 1813, she not only became entitled to a distributive share of their original shares of the fund, but also of the shares which belonged to

Bogert
v.
Furman.

them respectively as next of kin of their sister and of their brothers who had previously died without issue. The rights of the widow and of her three surviving children and of her two grandchildren in the fund, in August, 1815, were therefore as follows : Jacob was entitled to his original eighth, and to one-fifth of four-eighths which came to him as one of the next of kin of his brothers and sister who had died subsequent to 1805 without issue. His whole interest in the fund was therefore nine-fortieths, instead of one-fifth. Richard and Maria were each entitled to an interest in the fund to the same extent at that time ; and the two grandchildren together were entitled to nine-fortieths of the fund. And Elizabeth Furman the elder was entitled to one-fifth of four-eighths of the fund, as one of the next of kin of her four deceased children ; thus making up the remaining four-fortieths of the whole fund. Jacob only conveyed one-fifth, or eight-fortieths, of the fund to his uncle ; and the remaining one-fortieth still belongs to him if he is living. But whether he is living or dead is not stated in the master's report.

Upon the death of the first of the two children of George Furman, in the lifetime of the grandmother and after the death of their mother, the whole of the interest of the deceased child in the fund went to his surviving brother, to the exclusion of his uncles and aunt and of his grandmother. (*Evelyn* v. *Evelyn*, *Amb. Rep.* 191.) But upon the death of the surviving child of George, intestate and without issue, leaving no maternal grand parents, his whole interest in the fund went to his paternal grandmother, Elizabeth Furman the elder, to the exclusion of his uncles and aunt. This is the settled law under the statute of distributions. For in the case of *Blackborough* v. *Davis*, (1 *Peer Wms. R.* 41,) which came before the court of king's bench in 1701, upon an application for a mandamus to the spiritual court to grant administration to the aunt of the intestate, it was decided that the grandmother was nearer of kin to the decedent than the aunt ; and that she was entitled to administration and to the personal estate to the exclusion

of such aunt. And this decision was followed by the court of chancery in the cases of *Woodroff* v. *Wickworth*, (*Prec. in Ch.* 527,) and of *Mentney* v. *Petty*, (*Idem*, 593.) By the death of her two grandchildren, therefore, Elizabeth Furman the elder became the owner of nine-fortieths of the estate, in addition to the four-fortieths to which she was entitled, in August, 1815 ; the whole of thirteen-fortieths which was bequeathed to Maria Francis by the will of her mother.

G. W. Francis, therefore, as the administrator of his mother, and the administrator of the will annexed of his grandmother, is entitled to the interest of the whole fund up to the time of the death of Elizabeth Furman the elder, on the 28th of October, 1842, and to twenty-two fortieths of the capital of the fund, and of the interest thereon since that time. McCalla, as the assignee of the interest of Richard Furman the younger, is entitled to nine-fortieths ; E. R. Furman, as administratrix of Richard Furman the elder, who was the assignee of Jacob Furman of one-fifth of the fund, is entitled to eight-fortieths. And the remaining one-fortieth belongs to Jacob if living, or to his personal representatives if he is dead, to be distributed among his legatees or next of kin. The costs of the petition, and of McCalla, and of E. R. Furman, and of G. W. Furman and his mother, upon the reference, and on this application, except so much of the costs as have been produced by the litigation between McCalla and other claimants of the share of Richard Furman the younger, must be taxed and paid out of the fund. And the residue of the fund must be paid to the several parties interested therein in the proportions above mentioned. The interest which had accrued previous to the death of Elizabeth Furman the elder must also be paid to G. W. Furman, as her administrator with the will annexed.

The moneys due upon the bond and mortgage must be called in by the assistant register and distributed, as well as the moneys in the trust company, unless some of the parties interested choose to take an assignment of the

bond and mortgage, and to pay the amount due thereon beyond their shares. And if the share of Jacob Furman in the fund is not called for by him, or his personal representatives, within six months after the making of the order upon this decision, the assistant register is to be directed, in the order, to deposit it in the trust company, to accumulate until the further order of this court.