## SWEEZEY *vs.* WILLIS.

*In the matter of the Estate of* CHARLES H. WILLIS, *deceased.*

IT seems that by the sale of mortgaged premises on foreclosure, the interest of the owner of the equity of redemption, in regard to surplus moneys, is converted into personal estate, and if the owner die, the money must be distributed as personal estate among his legatees and next of kin.

On a contest for preference as to administration, between relatives whose priority is not settled by the statute, the single point to be ascertained is, who will be entitled to the surplus of the personal estate.

The Statute of Distributions, after providing for the succession to the estate in certain cases, directs in all other cases, the surplus to be distributed among *the next of kin.*

Who are the next of kin, is to be determined by the rule of the Ecclesiastical Law, which in such matters is a part of the Common Law.

In regard to the mode of reckoning degrees of kindred, the rule of the civil law has always prevailed, so far as relates to the succession to the personal estate of an intestate.

By the civil law, the grandfather of the decedent is in the second degree, and the aunt in the third ; the former is, therefore, nearer of kin than the latter, and is preferred in administration or distribution. This is the rule in this State, where the intestate dies unmarried without issue, and his nearest relatives are a grandfather and aunt.

G. CLARK, *for Petitioner.*
J. S. THAYER, *Public Administrator, for next of kin.*

THE SURROGATE. The intestate, Charles Henry Willis, died unmarried without leaving descendants, father, mother,

brother or sister. The husband of a maternal aunt applies for administration, and it appearing that there is a paternal grandfather living, the question arises, which is nearest of kin?

Some real estate, descended to the intestate on the side of his mother, subject to a mortgage, having been sold on a foreclosure, the surplus to which the decedent was entitled, was, in consequence of his minority, invested for his benefit. This comprising all the decedent's estate, it is contended on the part of the maternal aunt, that it is to be treated as real estate; and as, if it had continued to be real estate, it would by the statute of descents, have passed to his relatives on the maternal side, so now, though converted into money, it is still to be regarded as real estate in which his maternal relatives are alone interested, to the exclusion of his paternal relatives. It is argued, therefore, that as all the estate belongs of right to the maternal relatives, the husband of the maternal aunt, in right of his wife, will be entitled to administration, though she be not the nearest of kin.

I think this position entirely erroneous. It is true that administration belongs of right to the relatives of the deceased, who are entitled to share in the distribution of his estate; but the estate intended by the statute is not *real*, but "*personal* estate." (2 *R. S.*, 3*d* ed., *p.* 138, § 28.) Indeed, the only proper subject of administration being personalty, the sole question ever to be considered is, who are the relatives entitled to share in the distribution of the personalty. If the particular fund arising from the sale of the decedent's real estate, still continues to be real and not personal estate, it does not form the subject of administration at all, and the matter is entirely foreign to this application. In a proceeding for administration, I cannot look into the peculiar state, condition or nature of particular funds, unless my jurisdiction depends solely on assets; but on a contest for preference between relations, whose priority is not designated by statute, the single point to be

ascertained is, who will be entitled to the surplus of what is confessedly personal estate.

Both the grounds upon which the maternal aunt, through her husband, claims administration, have in my judgment been decided by the late Chancellor. In *Bogert* vs. *Furman*, 10 *Paige*, 496, he determined that by the foreclosure of a mortgage and the sale of the mortgaged premises, the interest of the owner of the equity of redemption is converted into personal estate, and if the owner subsequently die, his interest in the surplus moneys must be distributed as personal estate among his legatees or next of kin. And furthermore, he decided, that where the decedent dies intestate, without leaving a wife or any issue, or a father or mother, brothers or sisters, or maternal grandparents, but leaving a paternal grandmother surviving him, she is entitled to his whole personal estate, as his nearest of kin, to the exclusion of his uncles and aunts. It is urged, however, by the counsel for the applicant, that the rule thus laid down, is not consonant with our law, and that the cases referred to by the Chancellor (*Blackborough* vs. *Davis*, 1 *P. Wms.*, 41; *Woodroff* vs. *Wickworth*, *Prec. in Ch.*, 527; *Mentney* vs. *Petty*, *Id.*, 593), do not sustain the position. On looking into those cases, this view will be found erroneous. Our Statute of Distributions (2 *R. S.*, 3*d. ed.*, *pp.* 159, 160), in specifying the mode in which the surplus shall be distributed, provides, that "in case there be no widow, no children, and no representatives of a child, then the whole surplus shall be distributed to *the next of kin*, in equal degree to the deceased, and their legal representatives." Who are *the next of kin in equal degree* to the deceased, in such a case as the present, is not determined by the statute, and must, therefore, be decided by the rule of the ecclesiastical law, which has always controlled in such matters, as a part of the Common Law. In the absence of a statutory definition, a term of known legal meaning must be construed with reference to its ordinary and established use and interpretation.

63

Consanguinity is the connection or relation of persons descended from the same stock or common ancestor, *vinculum personarum ab eodem stipite descendentium.* (*Toller*, 87.) · *Lineal* consanguinity falls strictly within this definition, and is reckoned in the same way in the Canon and Common Law (*Bl. Com. Book II.*, c. 20, 32); the rule being, to begin at the common ancestor and reckon downwards, and in whatever degree the two persons, or the most remote of them, is distant from the common ancestor, that is the degree in which they are related to each other. The civilians, on the other hand, compute by counting upwards, from either of the persons related, to the common stock, and then downwards again to the other, reckoning a degree to each person, both ascending and descending. The difference is manifest: the Canon and Common Law, starting from the common ancestor; and the civil law starting from the intestate himself, as the *terminus a quo* the several degrees are numbered. Thus, by the civil law, from the intestate to his father, in lineal ascent, is *one* degree, and thence to the grandfather is another, or the *second* degree. Again, from the intestate to his mother is, lineally, *one* degree, thence to her father or mother, is the *second* degree; and thence downward to the aunt is the *third* degree. The paternal grandfather being in the *second*, and the maternal aunt in the *third* degree, by this mode of computation, he is therefore the nearest of kin. (*Domat*, *Pt.* 2, *L.* 2, *Tit.* 1, § 3, *Arts.* 3, 5.) The Spiritual Courts have adopted the rule of the civilians in reckoning propinquity of degree. (*Bl. Com. Book* 2, c. 32, *Co. Litt.*, 23; *Prec. in Ch.*, 527, 593; *Atk.*, 455; 2 *Cas. Temp. Lee*, 51; *Wms. on Exrs.*, 344, &c.), and in so doing, have necessarily placed grandfathers a degree nearer the intestate, than uncles and aunts. The Statute of Distributions altered in several particulars the mode of distribution consequent upon the computation of the civil law, but wherever the statute directs distribution to "*the next of kin*," the rule of the civil law still prevails, not to the extent of preferring

ascendants in all cases except that of brothers and sisters, to collaterals, but in regard to the manner of computing the degrees of kindred. I do not see that it is necessary to dwell upon this subject further, and must dismiss it by directing the grant of administration to go to the grandfather. As the counsel for the applicant conceives, that the aunt has the same interest in the surplus arising on the sale of the decedent's real estate under foreclosure, as she would have had, were it still real estate, that question may be reserved till the distribution, when it will properly arise for consideration.