CHENEY HILL AND CATHARINE HILL, APPELLANTS, *v.* JAMES W. NYE AND WILLIAM KELSEY, ADMINISTRATORS, ETC., OF NORMAN F. KELSEY, DECEASED, RESPONDENTS.

*Adoption — when the surrender of a child does not deprive the parents of the right to inherit as its next of kin — Chap.* 830 *of* 1873 *— only applicable to a subsequent adoption —* § 13 *thereof, construed.*

March 30, 1836, Cheney and Catharine Hill had a child, Delos. In February, 1837, Cheney was sent to State prison for ten years for forgery. A few months afterwards Catharine gave the child to one Kelsey, by whom the boy was reared and treated as his adopted son, his parents acquiescing and never objecting thereto. The boy took the name of Kelsey, and shared in the latter's estate. Subsequently Delos died, leaving a widow and a child by a former wife, between whom his property was divided. The child having died while a minor, leaving personal estate, the surrogate held that his maternal grandfather was entitled to the whole estate, to the exclusion of his paternal grandparents who were both living.

*Held*, that this was error; that all three were entitled to participate equally in the estate.

Chapter 830 of 1873, legalizing adoptions, only applies to such as take place after its passage.

Section 13 of said act provides "that nothing herein contained shall prevent proof of the adoption of any child heretofore made, according to any method practiced in this State, from being received in evidence, *nor such adoption having the effect of an adoption hereunder.*"

*Held*, that though the second clause provides that the statute shall not have the effect of *preventing* an adoption theretofore made from having the same effect as one made thereunder, yet it does not provide that an adoption theretofore made shall have the *like effect* as one made thereunder.

APPEAL from a decision of the surrogate of Genesee county in respect to the distribution of the property of Norman F. Kelsey, deceased. The decree gave the entire fund to Jonas W. Nye, the grandfather on the mother's side, to the entire exclusion of Cheney

and Catharine Hill, the grandfather and grandmother on the father's side of the said Norman F. Kelsey, deceased.

In 1875 Norman F. Kelsey died intestate, and an infant of about seventeen years of age. He was the son of Delos Kelsey, who was the son of Cheney Hill and Catharine Hill.

Delos Kelsey, the father of Norman F. Kelsey, died in January, 1871, leaving a will which was admitted to probate in Erie county. It gave one-half of his property to his son Norman F., and the other half to his widow, she being his second wife. Delos Kelsey's first wife, the mother of Norman F., died about two weeks after his birth.

According to the directions in the will the executor sold the real estate and converted it into personal property, and as such it came into the hands of the administrators of Norman F. Kelsey, deceased.

Delos was born March 30, 1836, and his father Cheney Hill in February, 1837, was sent to Auburn prison for forgery for ten years. A few months thereafter Catharine Hill, the wife of Cheney Hill and mother of Delos, gave the said Delos to one Ebenezer Kelsey, a resident of Maretta, Erie county, by whom the boy was reared. He took the name of Delos Kelsey, and lived with Ebenezer during his life, being called and treated as his adopted son.

The wife of Jonas W. Nye, the grandfather of Norman on his mother's side, died prior to the death of Delos Kelsey. There remains $1,449 assets in the hands of the administrators of Norman to be distributed to his next of kin. The surrogate held that it should all be paid to Jonas W. Nye, the maternal grandparent, to the exclusion of the appellants.

*N. A. Woodward*, for the appellants.

*Thomas Corlett*, for the respondents.

Hardin, J. :

The surrogate was entirely right in holding that the funds which came to the administrators of Norman F Kelsey, deceased, were personal estate. The will of his father, Delos Kelsey, gave

to him in terms half of his real and personal property. It directed a sale of his real estate by his executor, and the investment of one-half of the proceeds thereof " in mortgage or in mortgages on real estate," and that after the education and support that were to be given to Norman " the principal sum and any interest "  *  *  * *shall be paid* to him. The conversion was complete without any election on the part of the infant. (*Stagg* v. *Jackson*, 1 Comst., 206; *Horton* v. *McCoy*, 47 N. Y., 21.)

Cheney Hill and Catharine Hill, the grandparents on the father's side, stand in the same degree of relationship to the deceased Norman, as Jonas W. Nye, the surviving grandparent on the mother's side. They are the next of kin of the deceased. Being in the same degree the three take *per capita* in the distribution, thus giving each one-third of the fund to be distributed. (3 R. S. [5th ed.], 184; § 82, sub. 9; *Sweezey* v. *Willis*, 1 Bradf., 495; *Hurtin* v. *Proal*, 3 id., 414; *Bogert* v. *Furman*, 10 Paige, 496; *Knapp* v. *Windsor*, 6 Cush., 156.)

But it is insisted by the respondent that the gift by Catharine Hill of Delos to, and the adoption of him by Ebenezer Kelsey, have the effect to shut out the Hills from the distribution of the personal estate of Norman. The gift appears to have been made by parol. The father was then confined in State prison, and he says he never consented thereto. Though the evidence abundantly establishes the fact, that after Delos was given to Ebenezer Kelsey he continued to reside with the adopted father until he reached manhood, and that he was considered and treated by Ebenezer as his son, and as such named and provided for in his will. After Delos grew to manhood and was married, he went to Michigan and made a visit to his father and mother, the Hills, and they visited him, and the natural tie of consanguinity was recognized. There is, however, no evidence of any formal abandonment by the Hills of Delos ; nor any written evidence of their consent that he be adopted by Ebenezer Kelsey ; nor is there any written evidence of the adoption of him by Ebenezer Kelsey.

In 1871 Delos died and by his will the property now in the surrogate's court passed to the right of Norman. It became his absolutely, and upon his death it passed by the statutes of distribution to his next of kin. No such force can be given to the

gift by the mother of Delos to Ebenezer, as to prevent her or her husband from asserting and maintaining through the blood of their deceased son's kinship to Norman, the intestate. The ties of consanguinity were not severed by anything which occurred between the mother and Ebenezer Kelsey ; nor by the acquiescence of the child in the gift.

Thus far we have considered the case as one arising under our statutes of distribution and governed by them. The learned surrogate has in his opinion and decision treated the case as effected by the statute of 1873, entitled " an act to legalize the adoption of minor children by adult persons." (Chapter 830 of Laws of 1873.) Considering the title of the act and the words in the first section it would seem to be clear that it, in terms, only provides for " adoption " which may take place subsequent to the passage of the statute.

The first section is as follows, viz. : " *Adoption, as provided for in this act,* is the legal act whereby an adult person takes a *minor* into the relation of *child,* and thereby acquires *the rights* and *incurs* the responsibilities of parent in respect to such minor." The words, " as provided for in this act," are apt and appropriate words to indicate that a mode of adoption is to be prescribed in the subsequent parts of the enactment.

The second section equally favors this view of the intention of the Legislature, in prescribing for what might take place in the future, and in virtue of the act. It is as follows : " Section 2. Any minor child may be adopted by any adult, in the cases and subject to the rules prescribed in this act." Here is a clear intent to provide for future cases. The next seven sections prescribe the rules, and point out the mode in which such adoption may take place, if approved by a county judge of the county " in *which the person adopting resides.*"

The tenth section is as follows : " A child when adopted *shall* take the name of the person adopting, and the two thenceforth shall sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance, except that as respects the passing and limitations over of real and personal property, under and by deeds, conveyances, wills, devises and

trusts, said child adopted shall not be deemed to sustain the legal relation of child to the person so adopting."

It must be observed that this section expressly provides for consequences to happen subsequent to the adoption had in virtue of the statute.

It also provides " the two thenceforth shall sustain towards each other the legal relation of parent and child." Thus we have an express declaration that applies to the *two brought* together by the new relation, and a provision that " thenceforth " they shall sustain towards each other " the legal relation of parent and child." These words conclusively point to such adoptions as shall take place subsequent to the enactment.

The same idea is favored by the language of section twelve, viz. : " The parents of an adopted child are, from the time of the adoption, relieved from all parental duties towards, and of all responsibility for, the child so adopted, and have no rights over it." We have quoted so much of the statute with a view of showing that it in terms applies to future adoptions, and in no way refers to antecedent practices or methods of adoption, or the effect to be given to them.

We come now to consider the thirteenth section, which is claimed to apply to antecedent adoptions, in such manner as to give them all the force and the same effect which the statute prescribed for those which shall take place under the statute, and in virtue of its terms, subsequent to its passage.

The first part of the thirteenth section declares : " Nothing herein contained shall prevent proof of the adoption of any child heretofore made, according to any method practiced in this State, from being *received* in *evidence*, nor such adoption from having the effect of an adoption hereunder."

The first provision quoted relates to the kind of evidence which may be resorted to, in order to establish an adoption which may have taken place prior to the passage of the act. It declares that the statute shall not take away the then existing privileges to prove such adoptions as theretofore existed, according to the best evidence that existed in respect thereto at the passage of the act.

The second provision quoted, simply declares in effect that where such antecedent adoption may have been proved, or may

be found to exist, it may have full force and effect given to it, notwithstanding it took place prior to the passage of the statute. That nothing contained in the statute shall prevent such antecedent " adoption from having the effect of an adoption hereunder ;" that is, this statute shall not prevent such effect being given to it.

But this stops far short of declaring that such antecedent adoption, when proved, shall have the " like effect " of an adoption consummated in the mode prescribed by the statute.

The words quoted do not give fresh force and vigor to any adoption that took place prior to the passage of the act. The statute in effect declares that the antecedent adoptions shall not be subtracted from. In so declaring it does not add to the effect which they had antecedent to the enactment of its *provisions*.

Statutes should not receive retroactive construction, unless their words expressly require it. Such a construction is never to be favored. Especially is this true when a statute affects rights and liabilities already existing. (*Dash* v. *Van Kleeck*, 7 Johns., 477; *Wood* v. *Oakley*, 11 Paige, 400; *Mannis* v. *Butler*, 49 Barb., 176; *In re P. E. School*, 58 Barb., 162.)

We, therefore, must hold that the statute of 1873 does not have the effect to deprive the Hills of their rights to come in as kinsmen of Norman F. Kelsey and participate with his maternal grandparent in the distribution of his personal estate. The general statute of distribution remains unaffected as to the rights of the appellants, and must as before stated be applied.

We have been unable to find any provision in the act of 1873 which indicates an intent to interfere with the statute of distributions, in respect to cases of an adoption like the one before us. When a case shall arise under the statute of 1873, it will present numerous interesting questions as the statute is somewhat indefinite and obscure.

The surrogate has given very forcible reasons for holding that the " relation," the " new departure," provided for by such statutory adoptions gives the " two thenceforth " a right to join the next of kin of either and be connected in the distribution of personal property. The exception in the tenth section seems to include only the real estate.

The words " *excepting the right of inheritance* " are apt and

appropriate words to be used with an intent to except from the "new departure" such inheritance of real estate as would pass under the laws regulating descent. (Section 2 of chap. 2, part 2 of R. S. ; Section 1, article 1, title 2, chap. 1, part 2 of R. S.)

" Estates and lands are divided into estates of *inheritance*, estates for life," * * * etc.

Such a result, however, would lead to an inquiry as to why the Legislature should except the right of inheritance and not except the right of participating in personal property under the law of distribution. But it is not necessary to the decision of this case to pass upon these questions if my brethren agree with me in the conclusion that the statute of 1873 does not apply to this case.

We must reverse the decree made by the surrogate and remit the proceedings, with directions to distribute the personal property of the intestate among his three grandparents, share and share alike, and that the appellants' costs of this appeal be paid out of the fund before distribution.

TALCOTT, P. J., and SMITH, J., concurred.

Decree of the surrogate reversed and proceedings remitted to the surrogate of Genesee county, with directions to distribute the fund among the intestate's three grandparents. share and share alike, and that the appellants' costs of this appeal be paid out of the same before distribution.