(5 Misc. Rep. 428.)

### In re MARSH.

(Surrogate's Court, Cattaraugus County. November, 1893.)

DESCENT AND DISTRIBUTION—DEGREES OF RELATIONSHIP.

The grandfather and brother of an intestate are not related to intestate, in equal degree, within the meaning of 2 Rev. St. p. 96, § 75, providing that an estate shall be distributed to the next of kin in equal degree to decedent, who leaves no widow or children, but the brother will take to the exclusion of the grandfather.

Petition by Sidney S. Marsh to compel the administrator to account for and distribute decedent's estate. Dismissed.

N. M. Allen, for petitioner.

D. E. Powell, for administrator.

C. Z. Lincoln, special guardian, in pro. per.

DAVIE, S. Deceased died intestate February 23, 1892, leaving him surviving, a grandfather and one brother, a minor, but no widow, father, mother, child, or descendants. Letters of administration

were granted upon his estate April 9, 1892. On the 1st day of August, 1893, the grandfather, Sidney S. Marsh, filed his petition, in the usual form, pursuant to the provisions of section 2725 of the Code, alleging his right to share in the distribution of the personal estate of the deceased, and asking that the administrator be cited to show cause why he should not render an account of his proceedings for judicial settlement on the return day of the citation thereupon issued. The administrator and the special guardian interposed an answer to the petition, denying petitioner's right to any portion of the estate of the deceased, and consequently his right to institute and maintain this proceeding. So the only question involved is whether or not the grandfather is entitled to share with the brother in the distribution of the personal estate of the deceased.

Our statute of distribution provides that "in case there be no widow, and no children, and no representatives of a child, then the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives." 2 Rev. St. p. 96, c. 6, § 75, subd. 5, tit. 3, art. 3. But the statute does not prescribe who the next of kin of equal degree are, leaving that question to be determined by the rules of the ecclesiastical law, which has been regarded as controlling, and as constituting a part of the civil law upon that subject. In determining the degree of proximity of kindred, the courts have very generally applied the rules of the civil law. Williams, Ex'rs, 421; Schouler, Ex'rs, 133; 16 Amer. & Eng. Enc. Law, 703. Under these rules, in determining lineal consanguinity, each step up or down from the deceased counts as one degree; and in determining collateral consanguinity the rule is to count from the intestate to the common ancestor, and then down to the person whose kinship with the deceased is sought to be ascertained. By such a rule of computation the brother and grandfather are each two degrees removed from the intestate, or, in other words, a literal and arbitrary application of the rule would show the brother and grandfather to be next of kin in equal degree. But any rule of computation which leads to the conclusion that the grandfather and brother, as a matter of fact, are related to intestate in equal degree, so far as their property rights are concerned, must impress one as unreasonable and unjust. It would seem unnatural, and a very great public inconvenience, to carry the portion of children to grandparents, and, as has been well said, "contrary to the very nature of provisions among children, as every child may properly be said to have spes accrescendi." 2 Kent, Comm. 425. But a careful examination of this subject will show that the courts have not left this important question open and undetermined, as a matter of conjecture and speculation, to be disposed of in accordance with the apparent equities of each individual case. It was provided by section 16, 1 Rev. Laws, 314, that in case of one dying intestate, leaving no wife or child, his estate should be divided among the next of kin "in equal degree of or unto the intestate or their legal representatives." In the revision of the statutes in 1830, section 5 of the present statute of distribution was substituted for the pro-

visions of section 16 of the Revised Laws above referred to; and the revisers, in their original notes to section 5, say:

"This is intended as a substitute for the proviso in the sixteenth section of the act, (1 Rev. Laws, 314,) and is in conformity to the interpretation which the courts have given it. See Keylway v. Keylway, 2 P. Wms. 345; Stanley v. Stanley, 1 Atk. 455." 5 Edm. St. 383.

The seventh section of the English statute of distribution provides that in case there is neither wife nor child the estate shall be equally divided among the next of kin in equal degree. 22 & 23 Car. II. c. 10. Hence, it is evident that our statute in its present form is practically a transcript of the English statute, and that the considerations which led to the modification of our statute in 1830 were simply that the adjudications which had been made under the English statute should be controlling in the construction of ours. It, moreover, seems that the English statute was modeled after the provisions of the Justinian Novels. Prior to the adoption of the novels "De Agnatorum Jura Sublato," ascendants excluded collaterals, but the 118th novel provided for succession according to the following classes: Ascendants, descendants, and collaterals. Descendants were preferred to ascendants and collaterals; but it was provided that, if there were brothers or sisters of the whole blood, they should succeed along with the descendants "the nearest in degree." If the ascendants were the father and mother of the intestate, the estate should be divided among the brothers, sisters, father, and mother, per capita, so that each should have an equal share. Hunter's Roman Law, (2d Ed.) 864. The question arose under this 118th novel as to whether brothers and sisters would take to the exclusion of grandparents in case the parents of the intestate were deceased. This subject was very much discussed among the civilians in their construction of the novels. Opinion seemed divided. Ferriere and Domat contended that the brothers, sisters, and grandparents should share equally. Voet insisted that the brothers and sisters took to the exclusion of grandparents. Those agreeing with the views of Voet justified their claims upon two grounds: First, that it would be decidedly unnatural, and a matter of public inconvenience, to carry the portion of children to grandparents; and, second, that the effect of the provisions of the 118th novel, directing, as it did, that brothers and sisters should succeed along with "ascendants nearest in degree," changed the ordinary rule for computing the degree of kindred, so far as brothers and sisters were concerned, placing them in the first degree with the father and mother. The views and conclusions of Voet were adopted by the English courts in the construction of their statute, which, it will be remembered, is the same, in terms and effect, as our own. This question was first determined in Westminister Hall, in the case of Pool v. Whishaw, on the 9th of July, 1708, in favor of the brother, and against the grandfather, by the unanimous opinion of the court; and it is said that this question was at that time so thoroughly and deliberately considered that civilians were heard by the court before deciding the proposition. The same question again arose in the case of Norberry v. Richards, before the master of rolls, and was decided in favor of the brother.

This question was directly involved in the case of Evelyn v. Evelyn, 3 Atk. 762, decided January 14, 1754, by Lord Hardwicke. In that case the defendant, Sir John Evelyn, by his answer, insisted that he, being the grandfather of the intestate, was in equal degree of kindred to the plaintiff, Sir Charles Evelyn, a brother of intestate, and for that reason entitled to share equally with him in the distribution of the personal estate. Lord Hardwicke not only followed the decisions referred to, saying that it was successive determinations which made the law, but justified the conclusions arrived at in those cases upon the grounds of equity and convenience, asserting that it would be a public inconvenience to carry the portion of children to grandparents, adding:

"I would not be understood that the argument of inconvenience alone has weight enough to decide the question, but it is a reason, at least, for not unsettling former determinations. If I was to vary in opinion, it would tend to alter distributions made since 1708, and disturb the peace of families." Evelyn v. Evelyn, 3 Atk. 762.

Sir John Strange also gave his sanction to this rule, after careful consideration, in Lloyd v. Tench, 2 Ves. Sr. 213.

The decisions in this country bearing upon this question are not numerous. The first case in point which I have been able to discover is that of Bogert v. Furman, 10 Paige, 496, decided by Chancellor Walworth in 1843, in favor of the brother, and to the exclusion of the grandfather. In that case the chancellor recognized the authority of Evelyn v. Evelyn as controlling on that subject. In the case of Hurtin v. Proal, 3 Bradf. (Sur.) 414, Surrogate Bradford also recognized the rule to be as above stated. Nor am I able to discover a single authority holding, directly or by implication, to the contrary.

After a careful consideration of this matter, and examination of the reported cases where this question has been involved, I am fully convinced that the authorities cited are correct in principle, entirely in harmony with the dictates of justice and equity, and that they should be followed in disposing of the case at bar. A decree will accordingly be made, dismissing this proceeding upon the ground that the petitioner is not entitled to share in the distribution of the estate. Decree accordingly.