GEORGE MARK and Others, Respondents, v. THE VILLAGE OF WEST TROY, Appellant.

*Streets created by dedication — street extending to a river — accretions — ferry — reservation and exemption from dedication — intention*

It is always a question of fact whether or not a public highway has been created by dedication.

To effect a dedication, the intent of the owners of the land must clearly appear.

A dedication may be revoked or modified, before acceptance by the public.

*Quære*, whether the general doctrine, that a dedication of a highway to a river extends the highway over subsequent accretions to the river bank, applies in a case where the owners of the land dedicate land extending only to the river, while owning land under water beyond the portion so dedicated which is afterwards filled in.

In 1828 the trustees of the owners of a farm forming a portion of the village of West Troy on the Hudson river made and filed a map laying the farm out into lots and streets, on which Canal street was described as "extending to the river;" the trustees were, at the time of filing the map, owners of land in the river under water adjoining the foot of Canal street, and were then operating a ferry from the foot of that street. In 1829, before there had been any acceptance of the street by public user or otherwise, all the parties interested in the farm mutually executed a partition deed thereof, by which the right to conduct the ferry, together with a lot adjoining the foot of Canal street, was reserved to the trustees, who afterwards, in 1835, deeded the ferry right and the privilege of approach to the ferry to certain persons, who filled in the river for 200 feet from the foot of Canal street These grantees and their successors were ever after in possession of such filled land, and erected and maintained fences and ferry buildings thereon.

In 1888 the grantees of the ferry rights, then in possession of the ferry and of the filled-in land, brought an action to restrain the village of West Troy from removing the ferry and ferry buildings, which the village claimed a right to do on the ground that the premises were part of a public street. The defendant insisted that the making and filing of the map and the subsequent use of Canal street by the public effected a dedication thereof to the river.

*Held,* that the facts and circumstances disclosed an intent on the part of the owners of the land in making the dedication to reserve to themselves and their grantees the foot of Canal street and such part of the river shore as was required for the use of the ferry ;

That the reservation of the right to maintain a ferry should be deemed to mean a reservation of everything appertaining to the land which was necessary to conduct the ferry business properly, such as a dock, fences and toll house, and means of approach to the ferry ;

That if the dedication as originally made was not so limited, the subsequent acts of the owners of the land must be deemed a revocation of the dedication as to that part of the foot of Canal street required for the use of the ferry ;

That as it did not appear that when the deed of the ferry privilege was executed in 1835, the dedication had been accepted, or that there had been any public use of Canal street, the dedicators or their grantees had power to modify or revoke the dedication ;

That the fact that the plaintiffs or their grantors, ever since a period prior to the alleged dedication, had remained in the quiet and peaceable possession of the premises; and the fact that the premises had never been in the occupation of the village, showed an absence of intent on the part of the proprietors of the land ever to dedicate the premises in suit.

APPEAL by the defendant, The Village of West Troy, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of Albany county on the 26th day of February, 1892, upon a decision of the court rendered after a trial by the court without a jury at the Albany Circuit.

The action, which was commenced in December, 1888, was brought by the plaintiffs as the owners and managers of the Troy and West Troy Ferry franchises and property, for a temporary and permanent injunction restraining the defendant from removing or disturbing the fences, buildings or property of the plaintiffs located at the western terminus of their ferry, in the village of West Troy, and for damages, etc.

The answer denied that the plaintiffs are the owners of the lands and premises in question, and averred that such lands are a part of a public street or streets in the village of West Troy, which extend easterly to the waters of the Hudson river, and that the fences and buildings in question are unlawful obstructions upon said street or streets.

*Eugene McLean* and *E. Countryman*, for the appellant.

*R. A. Parmenter*, for the respondents.

PUTNAM, J. :

We think that the legal propositions asserted by the learned counsel for the appellant are generally correct.

The making of a survey and map of the village of West Troy by the former owners of the land, laying out lots and streets thereon, filing said map with the county clerk, and selling lots with reference thereto, if followed by a public use of said streets, or other accept-ance thereof, constituted a dedication, and it is true that a dedi-

cation once made and accepted cannot be revoked. Also, generally, where a street thus dedicated extends to the shore of a river, and such shore is shifted by natural accretion or, otherwise, the street will be extended over such accretion to the new shore.

If, then, the evidence shows that there was an absolute unqualified dedication of Canal street to the river shore, and an acceptance of such dedication by the public or the village of West Troy, we are not prepared to say that plaintiffs or their grantors by filling in the river east of Canal street would deprive the public of access to the shore, unless other facts appear in the case which had the effect of limiting the dedication.

It is always a question of fact whether or not a public highway. has been created by dedication. (*Flack & Ors.* v. *The Village of Green Island*, 122 N. Y. 107.) And to effect a dedication the *intent* of the owners of the land must clearly appear. The owners' acts and declarations should be unqualified and decisive, manifesting a positive and unmistakable intent to permanently abandon his property to the specific public use. If they be equivocal or do not clearly and plainly indicate the intention to permanently. abandon the property to the use of the public they are insufficient to establish a case of dedication. (*Holdane* v. *The Trustees of the Village of Cold Spring*, 21 N. Y. 474–477; *State* v. *Green*, 41 Iowa, 693; *City of Columbus* v. *Dahn*, 36 Ind. 330; *Niagara Falls Suspension Bridge Co.* v. *Bachman*, 66 N. Y. 261.)

And a dedication before acceptance by the public may be revoked or modified. (*Holdane* v. *Trustees of the Village of Cold Spring*, *supra*; *Lee* v. *The Village of Sandy Hill*, 40 N. Y. 442, 443; *City of Cohoes* v. *The D. & H. C. Co.*, 134 id. 397, 402.) A dedication of a highway is in effect a gift of a right of way over land to the public which only becomes operative by acceptance. Until accepted, the donor may change his mind at any time and withdraw his offer. When accepted the title of the public to the highway becomes absolute.

The real questions in this case are of fact, and are, whether the dedication under consideration made by filing the map in 1828, which described Canal street as extending to the river, had the effect of extending said street over the other land of the dedicators under water east of the river shore. Whether such dedication was limited

by the reservation contained in the partition deed of 1829, and hence subject to the rights of the owners to the ferry landing at the foot of Canal streeet, then being used as such. If the effect of filing the map was to give to the public a right to use Canal street to the river and over the water lots of the owners, whether the fact that the latter at once and before any acceptance of Canal street by public user, took possession of and have ever since occupied the premises in question, effected a revocation or modification of said dedication.

On March 7, 1828, George Tibbits and others, as trustees for certain *cestui que trusts*, being the owners of the lands embracing the premises in question and a portion of the village of West Troy, laid out the same into lots and streets and made and filed a map thereof. In said map Canal street is described *as extending to the river*. The defendant claims that the making and filing of the map and the subsequent use of Canal street by the public, effected a dedication thereof *to the river*.

The trustees at the time of filing the map were the owners by grant from the State of lands in the river under water east of and adjoining the foot of Canal street. After the making of said map, and on October 12, 1829, all the parties interested in said premises mutually executed a partition deed of said farm, duly dividing said property according to their respective rights. Each grant in said partition deed had the following clause : " Excepting and reserving out of this release all right of ferrying or establishing, keeping or maintaining a ferry or ferries across the river Hudson, it being understood and expressly agreed by and between the said parties that the right of ferriage is to remain vested in them, the said Philip Schuyler, George Tibbits, Richard P. Hart and Nathan Warren, as such trustees as aforesaid until further partition is made by said proprietors of West Troy of the residue of said trust estate."

The trustees also retained the title of lot No. 40, which adjoined the foot of Canal street. The title was so retained for the purpose of maintaining a ferry. At that time the Troy and West Troy ferry boats landed at the foot of Canal street. The said trustees on September 19, 1835, conveyed to John P. Cushman and Ebenezer Wiswall said lot No. 40, " and also all the exclusive right and privilege of keeping and maintaining a ferry and ferries across the river

Hudson from any and every part of the said village of West Troy, and the right and privilege of approach to said ferries as now used and vested in the said trustees in trust as aforesaid for the said parties of the first part, their heirs or assigns, and also all the said exclusive right and privilege of keeping and maintaining a ferry or ferries across the said river which have been reserved to said trustees."

Thereupon said Cushman and Wiswall became the owners of said " ferry then being operated and maintained and the property belonging and appertaining to said ferry, the landing of which was then at the foot of said Canal street, as it then existed, and the exclusive right of ferriage not only at that particular landing, but also the exclusive right of ferriage all along the said shore of said Hudson river fronting on said village of West Troy." The said grantees " and their successors filled in with earth to the depth of several feet from the then foot of Canal street, and of lot No. 40 easterly to where the said ferry landing now is, a distance of upwards of two hundred feet, at their own costs and expense. The ownership of said ferry landing and the lands pertaining to it changed from time to time by reason of sales and conveyances and transfers of, undivided parts thereof, but at all times the said ferry was being maintained and the possession thereof and of the property pertaining thereto held by the owners thereof."

It appears, therefore, that from a time prior to the filing of said map the owners of said land conducted a ferry business from Troy to West Troy, landing the boats at the foot of Canal street. The right to conduct said business was reserved to the trustees in the deed of 1829, and conveyed by them to Cushman and Wiswall by the deed of 1835.

The learned trial judge made, among others, the following findings: " In transforming the Bleecker farm into village and farm lots and streets and causing them to be placed upon the Roberts map, the then owners thereof did not intend to dedicate to the public said Canal street, now known as Sixteenth street, any further east than as indicated on said map. Nor did they intend, by such dedication as was made, to interfere with or encroach upon the public ferry then existing, and which at that time had its landing within the side lines of said street produced easterly.

" It was the intent of the owners of said Bleecker farm, when they

decided to lay out said farm into village and farm lots, separated by streets, and partitioning the lots among the several owners by the deed which expressly reserved said lot number 40 on the corner of Broad and Canal streets, and the land under the water extending into the Hudson river, to except out of such dedication the then existing ferry and the exclusive right of occupying and maintaining a ferry or ferries, subject to the sovereign power of the State at the place where the ferry and the landing thereof then existed."

After a careful consideration of the evidence we think the conclusions of the trial judge were correct.

As already stated, ordinarily a dedication of a highway to the river gives the public a right of access thereto, and if the bank is extended by accretion or otherwise the highway is likewise extended. But we doubt whether this doctrine applies in a case like this, where the owners only dedicated to the river or water's edge, while owning land under water east of and beyond the portion so dedicated, and which was afterwards filled in with earth. We doubt whether the street could be extended over land under water which was not laid down on the map as a part of the said street. But we do not deem it necessary to discuss this view of the case.

The question to be considered is as to the intent of the owners of the land at the time in question, to be gathered from the filing of said map and the deeds aforesaid and the facts and circumstances of the case. The map filed in 1828 and the partition deed of 1829 should be deemed one transaction. It does not appear that between 1828 and 1829 there had been any acceptance of Canal street by public user or otherwise, and hence the owners of the land in 1829 could modify or revoke any dedication made by filing the map of 1828.

When the map was filed a ferry business was being conducted with a landing at the foot of Canal street. In the partition deed the right to conduct such ferriage business was reserved to the trustees, and they afterwards deeded it to Cushman and Wiswall, conveying to the latter the exclusive right of ferriage and the right and privilege of approach to said ferries. After Cushman and Wiswall became the owners of said privilege they filled in the river 200 feet from the foot of Canal street, and they and their successors have ever since been in possession thereof.

Third Department, February Term, 1894.          [Vol. 76.

We think that the evidence discloses an intent on the part of the owners of the land in making the dedication to reserve the foot of Canal street for the use of the ferry. The reservation of the right to maintain a ferry should be deemed to mean a reservation of whatever appertaining to the land was necessary to conduct the ferriage business properly, a dock, a place to erect a toll house, with proper fences and means of access to the ferry. When, in connection with the reservation in the deed of 1829, we take into consideration the fact that then and ever since that period the said owners of the land or their grantees have remained in possession of the *locus in quo;* that after the deed to Cushman and Wiswall the latter or their grantees commenced the filling in of the river with earth at the foot of Canal street, and have erected on the land so filled in fences and buildings, and have continued to occupy the same, the intent of the dedicators to reserve the premises in question for the use of the ferry business seems apparent.

We think, therefore, that in the offer of Canal street by the owners of the land in question to the public, it was their intention to reserve that portion required for the use of the ferry. Such part was never dedicated, but was retained by the owners of the land and their grantees. It is a fair presumption that the right to maintain a ferry means at the place where the ferry was when the map of 1828 was filed and the deeds were executed; also means the right to control the landing where the ferry boats landed, and to erect there suitable docks and buildings for carrying on the business. Such rights were inconsistent with the dedication. The intent of the givers of the land was not to include the shore of the river as far as the same was required for the use of the ferry.

If, however, the dedication as originally made in 1828–1829 was not so limited, the subsequent acts of the owners of the land must be deemed a revocation of the dedication as to that part of the foot of Canal street required for the use of the ferry. The village of West Troy was not incorporated until 1836. In 1835, when the deed to Cushman and Wiswall was executed, the evidence does not show that the dedication had been accepted. It does not disclose the fact that there had been any public use of Canal street. Hence, the dedicators or their grantees could modify or revoke said dedication. (*Lee* v. *The Village of Sandy Hill,* 40 N. Y. 442.) The trustees

conveyed the exclusive right to maintain said ferry and the approach thereto, and it appears that Cushman and Wiswall and their grantees took possession of said ferry, continued the business, and filled in the river at the foot of Canal street with earth several feet in depth, erecting on said filling the structures necessary to carry on their business, and have remained in possession ever since such conveyance, a period of almost sixty years. Hence, if the filing of the map in 1828 by the owners of the land, and the transaction of 1828–1829 should be deemed an act which, if followed by a public user of the street, would have given the public a right to a street extending to the river, yet, as it is not made to appear that there was any public user of the street prior to 1835, when the conveyance was made to Cushman and Wiswall, and as it appears that the latter and their grantees entered into possession of the *locus in quo* and have ever since remained in possession, it must be held that there was a revocation or modification of the dedication. But, in fact, the evidence shows a possession by plaintiffs and their grantors of the premises in question since prior to 1828. We are of opinion that the fact that plaintiffs or their grantors, ever since a period prior to the alleged dedication have remained in the quiet and peaceable possession of the premises in question, and the fact that such premises have never been in the occupation of defendant, shows the absence of an intent on the part of the proprietors of the land ever to dedicate the lot described in the complaint.

It is suggested by the learned counsel for the appellant that it does not appear that the grantors, who reserved the right of ferriage, had ever acquired such a right from the sovereign power of the State, which is the only legal source for its exercise. We do not deem it important in this case to consider whether the said grantors were conducting the ferriage business under authority conferred on them by the State or not, or whether it should be presumed that they were legally conducting said business or otherwise. They were in fact carrying on the ferriage business. The question for our consideration in this case is as to their intent in making the dedication in question under the circumstances appearing in the case. Whether they carried on the ferry business with or without the authority of the State is not important on the question of their intent.

We think that the trial judge disposed of the case correctly, and that the judgment should be affirmed, with costs.

MAYHAM, P. J., concurred; HERRICK, J., not acting.

Judgment affirmed, with costs.